[No. 10959.    *En Banc.*  August 21, 1913.]

THE STATE OF WASHINGTON, *on the Relation of Spokane &*
*Inland Empire Railroad Company, Appellant,* v.
STATE BOARD OF EQUALIZATION, *Respondent.*[1]

TAXATION — VALUATION OF RAILROAD PROPERTY — EQUALIZATION —
FINDINGS—REVIEW BY CERTIORARI—ARBITRARY ACTION—REMEDIES. Be-
cause of the impossibility of any practical or effective relief to the
relator, certiorari does not lie to review the action of the state board
of equalization in refusing to take evidence, and in adopting, as con-
clusive, the finding of the public service commission as to the
valuation of the operating property of a railroad company, which
finding was, by Laws 1911, p. 601, § 92, made conclusive for the pur-
poses of assessment for taxation; since on review by certiorari the
hearing must be on the case made and without evidence *dehors* the
record, and since under Rem. & Bal. Code, § 9204, the sessions of the
state board of equalization are limited to twenty days, and after
dissolution by operation of law, there can be no remand to it for
further evidence, making it impossible to arrive at a true basis for
the valuation sought to be corrected; hence, the only remedy for
arbitrary or illegal action by the state board of equalization is by
original action on the equity side of the court where evidence on
the merits of the question may be received.

Appeal from a judgment of the superior court for Thurs-
ton county, Mitchell, J., entered December 9, 1912, dismiss-
ing a proceeding to review an order of the state board of
equalization in fixing the value of relator's properties for the
purpose of taxation.    Affirmed.

*Graves, Kizer & Graves,* for appellant.

*The Attorney General* and *J. T. S. Lyle, Assistant,* for
respondent.

PARKER, J.—This is a certiorari proceeding commenced
and prosecuted in the superior court for Thurston county,
wherein the relator sought to have reviewed and corrected
the alleged unlawful and arbitrary action of the state board
of equalization in fixing the value of its operating property

[1]Reported in 134 Pac. 695.

in the year 1912 for purposes of taxation. Upon the filing of the affidavit praying for relief on behalf of the relator, an alternative writ was issued by the superior court on October 2, 1912, returnable October 10, 1912. The defendant thereupon filed a motion to quash the writ and dismiss the proceeding, assigning grounds therefor which we will hereafter notice. The issues raised by the motion to quash having been argued and submitted by counsel, the court decided that the defendant was entitled to have the writ quashed as the record then stood, and the relator electing to stand upon its affidavit and not plead further, judgment of dismissal was entered accordingly. From this disposition of the cause, the relator has appealed to this court.

This is a companion case to *Spokane & Inland Empire R. Co. v. Spokane County*, ante p. 72, 134 Pac. 688. While that case involved the assessment and equalization of relator's operating property for the year 1911, this case involves the assessment and equalization of its operating property for the year 1912. The relief sought is, in substance, the same as to its ultimate effect, though that was a suit in equity against Spokane county and its treasurer seeking to compel acceptance of payment of relator's taxes computed upon a less valuation than that fixed by the state board of equalization.

The material facts here involved, as alleged in the affidavit for the writ filed in behalf of the relator, may be summarized as follows. The relator owns and operates an electric railway system of street and interurban lines in Spokane and Whitman counties. In the years 1908, 1909 and 1910, the state board of tax commissioners assessed the operating property of the relator in the manner provided by law relating to the assessment of operating property of railroads, Rem. & Bal. Code, § 9141 (P. C. 501 § 281), and following. In the year 1910, the valuation so placed upon the relator's operating property was $6,500,398, as of March 1st of that year, as required by that law. Between that date and March 1, 1911,

the relator acquired no additional property, save small additional trackage, which at the valuation so placed upon its other operating property would have added not over $45,000 to the value of its property. Owing to general depression in business, the relator's operating property decreased in value between those dates, so that on March 1, 1911, the value of its operating property did not exceed $6,545,500. Between March 1, 1911, and March 1, 1912, the relator added to its operating property some additional trackage, which according to previous assessment would have added not to exceed $100,000 to the value of its operating property, so that the value of appellant's operating property on March 1, 1912, was not in excess of $6,645,000. These are the relator's allegations as to what it conceives the value of its property to be at the times mentioned.

The facts touching the valuation of appellant's operating property by the public service commission and the state board of equalization in the years 1911 and 1912, as alleged in the affidavit for the writ, are as follows: No valuation of the relator's operating property was made by the public service commission, as provided by the Laws of 1911, p. 601, § 92, until September 21, 1911, when a finding was duly made by that commission fixing the value of all of the relator's operating property, being all its property "used for the public convenience within the state," at the sum of $12,500,000. The state board of equalization for that year, being then in session, adopted the value of the relator's operating property so found by the public service commission, without any exercise of its own judgment as to such value. This is the alleged arbitrary action of the state board of equalization which was the subject of controversy and which was sought to be corrected in the case of *Spokane & Inland Empire R. Co. v. Spokane County, supra.* In April, 1912, the relator applied to the state board of tax commissioners for a hearing as to the value of its property. That board refused to hear evidence as to the value of the relator's operating property, claiming

that the finding of value made by the public service commission on September 21, 1911, was conclusive upon the question under the public service commission law, Laws of 1911, p. 601, § 92.  It is further alleged:

"Thereafter the state board of equalization duly convened at Olympia, and during its session the company appeared before it by its officers and attorneys and asked to be permitted to introduce evidence as to the true cash value of its operating property within the state of Washington for taxing purposes for the year 1912, and particularly to show that from March 1, 1910, up until that time, to wit, September 6, 1912, the company had added to the value of its tangible property but $145,000, and that because of increase of competition and business depression, the value of its property, from an income producing standpoint, had greatly decreased, and that the value of its property as of March 1, 1912, and at any time up to that date, was not in excess of $6,645,000.  It also offered to prove that the greater portion of its operating property consisted of real estate and the greater part of that was in Spokane county; that in Spokane county alone there had been a 10% decrease in real property valuations from the year 1911 to the year 1912, owing to general business depression, and that the assessor of Spokane county, in valuing real property within his jurisdiction, had made a 10% cut in real property values for the year 1912 over those prevailing for the year 1911.  The state board of equalization refused to hear such evidence, and stated that if the company should show a change in the physical condition of its operating property subsequent to the finding of value made by the public service commission, that it would receive such evidence, but that upon all other points it was bound by the finding of value made by the public service commission upon September 21, 1911, and that it was not within its power to use any other basis of valuation in the assessment of the company's operating property, no matter what its true cash value might be, and that the company could have no reduction in such value for assessment purposes, no matter how much such value might have decreased due to business depression and inability to earn income, and that it was not entitled to any reduction in such value to correspond with the decrease in valuation of all other property in Spokane county and elsewhere through-

out the state due to the general business depression.   Thereupon, the state board of equalization adopted the finding of value made by the public service commission of September 21, 1911, as the valuation of plaintiff's operating property within the state of Washington for the assessment year of 1912, and the state board of tax commissioners threaten to, and will unless prevented by order of this court, certify the valuation of plaintiff's operating property to the counties of Spokane and Whitman, where its operating property within the state is situated, upon the basis of the valuation so fixed, to wit: $12,500,000."

It is further alleged that the finding of the public service commission is pending on review in the superior court for Spokane county.   Facts are further alleged which, if true, we may, for argument's sake, assume would show that the relator's operating property was finally valued by the state board of equalization of 1912 at an unwarranted and excessive amount, and as the result of the arbitrary and unlawful action of that board.

Respondent's motion to quash the writ is rested upon grounds stated therein, among others, as follows:

"(1)    That the facts stated in the affidavit of W. G. Davidson praying for the issuance of a writ of review herein, and the facts stated in such writ of review, are not sufficient to warrant the issuance of a writ of review, or to entitle the plaintiff to relief.  .  .  ."

"(3)    That the remedy sought to be obtained by the writ of review has become unavailing, in that the state board of equalization completed its equalization of the property of the state and completed its assessment and equalization of the operating property of the plaintiff prior to the 25th day of September, 1912, on which last mentioned date said state board of equalization adjourned sine die; that prior to the said 25th day of September, 1912, the state board of tax commissioners duly apportioned the value of the operating property of the plaintiff to the counties of Spokane and Whitman, in such proportion to the entire value as determined by the state board of equalization, as the length of line in each county bears to the entire length of line within the state, and on said 25th day of September, 1912, duly certified such value as

apportioned to the county assessors of such counties respect-
ively, as more particularly appears from the affidavit of E. J.
Koors, attached hereto and made a part of this motion."

The allegations of paragraph 3 of the motion to quash,
above quoted, are duly verified and are not controverted.  In
this connection it is to be remembered that this proceeding
was commenced by the issuance of the writ on October 2, 1912,
which was after September 21, 1912, the date of the ad-
journment of the state board of equalization and the appor-
tionment and certification of the assessment of the relator's
operating property to the counties of Spokane and Whitman
as the law directs. Rem. & Bal. Code, § 9151 (P. C. 501
§ 301).

We are met at the outset with the question of the practical
availability of certiorari to the relator as a remedy to correct
the alleged wrong which it claims to have suffered by the ac-
tion of the state board of equalization.  We may assume, for
argument's sake, that the allegations of fact made in the affi-
davit praying for a review of the alleged arbitrary action of
the state board of equalization would, if proven, constitute
ground for relief in the relator's behalf in a court of equity
exercising  original  jurisdiction.    This controversy, how-
ever, is not one of original jurisdiction, either in the superior
court or in this court; neither is the reviewing jurisdiction of
these courts here sought to be invoked (which is in substance
only appellate jurisdiction) such as can be exercised by a
trial *de novo* in either of these courts of the controversy the
determination of which by the state board of equalization is
sought to be reviewed.  It seems clear that our statutory
certiorari and review proceeding contemplates a review in the
courts of the proceeding had in an inferior tribunal only
upon the record of such proceeding made therein, and that
such review is in no sense a trial *de novo* of the questions de-
termined by the inferior tribunal sought to be reviewed.  Rem.
& Bal. Code, §§ 1002, 1004, 1005, 1007 (P. C. 81 §§ 1729,

1733, 1735, 1739) ; *Browne v. Gear*, 21 Wash. 147, 57 Pac. 359; *Swope v. Seattle*, 35 Wash. 69, 76 Pac. 517.

Learned counsel for the relator concede this to be the correct view, stating in their reply brief: "We do not claim, of course, that evidence may be introduced *dehors* the record. The case must be decided by the reviewing tribunal upon the record made before the inferior tribunal." Having, now, the scope of the superior court's inquiry upon certiorari thus limited, in view, is there any practicable or effective relief which that court could grant to the relator in this proceeding, even assuming that the alleged facts might be sufficient to warrant interference by a court of equity exercising original jurisdiction, where, of course, there would be ample power to receive evidence upon the merits of the relator's contentions touching the correct valuation of its operating property and the alleged erroneous results of the arbitrary action of the state board of equalization in valuing the same? The court might be able to say that the state board of equalization acted arbitrarily, and yet be unable in this proceeding to render any effective judgment in favor of the relator for want of evidence showing the measure of its rights upon the question of the proper valuation of its property, and also be unable to remand that question to the state board of equalization because that board was dissolved and the valuation fixed by it apportioned and certified to the counties of Spokane and Whitman, as the law directs, before this proceeding was commenced in the superior court. There are decisions of this court which, viewed superficially, may seem to lend some support to the view that the relief here sought may be granted in this proceeding; but when viewed critically, we think none of them can be regarded as authority for holding that any practicable relief can be given appellant in this proceeding.

Before noticing these decisions, let us be reminded that the allegations for the writ show affirmatively that no evidence was received by the state board of equalization touching the merits of the proper valuation of appellant's property; so,

of course, we have no evidence here whatever throwing any light upon what such valuation should be, other than the finding of value made by the public service commission and the presumption as to the correctness of that finding, which finding it is alleged the board of equalization arbitrarily adopted. Clearly, then, we cannot decide what other specified valuation would be proper, even conceding that the action of the state board of equalization was arbitrary and unlawful. It is, therefore manifest that the court cannot decide upon, nor direct the taxing officers to adopt, any other specified valuation as the basis upon which to compute the amount of taxes to be paid by appellant. It is true such a judgment, in substance, has been made in certiorari proceedings, but only when all of the facts touching the merits of such a question were before the court sufficiently plain to enable it to do so; that is, when the facts before the court were such as to enable the court to render or direct a final judgment upon the merits.

In *Lewis v. Bishop,* 19 Wash. 312, 53 Pac. 165, there was involved an attempted raise of the valuation of an owner's property by the county board of equalization without giving him notice as required by law. This action of the board of equalization was reviewed by the court on certiorari, resulting in the setting aside of the board's order, thus leaving the valuation as fixed by the county assessor, manifestly upon the ground that the board acted without jurisdiction because of its failure to give notice as the law requires. It is plain that the court was able, upon the facts shown by the record made by the board of equalization in its proceeding, to render an effective judgment, nor was it necessary to remand the proceeding back to the board of equalization for correction even if the board had not been dissolved. This disposition of the cause by the court left the amount of the owner's taxes to be determined by mere computation by the officers authorized to collect such tax.

In *State ex rel. Oregon R. & Nav. Co. v. Clausen,* 63 Wash.

535, 116 Pac. 7, there was involved in certiorari proceedings
the alleged excessive value of the relator's operating property,
made by the state board of tax commissioners and the state
board of equalization, which value was far in excess of that
which had been duly determined by the finding of the railroad
commission, as provided by Rem. & Bal. Code, § 8638, which
finding was by that section declared conclusive evidence of the
value of such property.  Reversing the decision of the su-
perior court rendered in the certiorari proceeding to review
the action of the state board of equalization, this court deter-
mined, as a matter of law, that the value of relator's property
could not be fixed at a greater sum than that found by the
railroad commission; and, assuming that the record before
it showed facts so warranting, directed the superior court to
enter judgment fixing the value of relator's property at the
sum found by the railroad commission; and that the same per-
centage of that value be taken as a basis for the levy as was
taken in considering like property belonging to others.  This
decision also resulted in determining the value of relator's
property for purposes of taxation, so that the amount of its
taxes became only a matter of computation.  It is also worthy
of note that there was no question of procedure involved in
that proceeding.

In the cases of *Metropolitan Building Co. v. King County*,
62 Wash. 409, 113 Pac. 1114, Ann. Cas. 1912 C. 943; *Id.*,
64 Wash. 615, 117 Pac. 495; and *Id.*, 72 Wash. 47, 129 Pac.
883, there was involved facts shown by the record which en-
abled the court to render a like final judgment touching the
correct assessable value of the property involved, and it is also
worthy of note that in those cases no question of procedure
was involved.  In *Dexter Horton Nat. Bank v. MacKenzie*,
69 Wash. 314, 124 Pac. 915, a like result was reached in a
certiorari proceeding, for the reason that the conceded facts
there involved enabled the court to determine the correct
amount of assessment of the property and direct the taxing
officers to receive taxes thereon computed accordingly.

Neither was there any question of procedure involved in that case. If there be room for suggesting in any of those cases that facts were considered by the court other than those shown in the record of the proceedings of the inferior tribunal sought to be reviewed, such facts were manifestly before the court by consent. To whatever extent this might have occurred in those cases, it was a submission to the jurisdiction of the court of questions which were within the subject-matter of the court's jurisdiction.

While it is apparent from our statutes and the decisions we have noticed that there is no want of authority in the courts to review by certiorari actions of boards of equalization which unlawfully invade the rights of the taxpayer, yet it seems plain to us that, in this particular proceeding, it is quite impossible for the court to render to appellant any practicable or effective relief, in so far as any final judgment determining the proper amount of the assessment to be put upon its operating property for the year 1912 is concerned, since we have seen there are no facts before us tending to show any valuation of appellant's property other than the findings of the public service commission, the correctness of which is challenged by appellant. The following decisions are of interest upon this subject, though we do not cite them as being directly in point. They show the impracticability of reviewing the action of taxing officers by certiorari proceedings where there is no authority for the court considering anything other than the record made by the taxing officers, and the relief must of necessity, to be effectual, be a final judgment upon the merits, rather than a remanding of the matter for correction by such officers. *People ex rel. Westbrook v. Trustees of Ogdensburgh*, 48 N. Y. 390; *People ex rel. Mayor etc. of New York v. McCarthy*, 102 N. Y. 630; *Ward v. Board of Equalization of Gentry County*, 135 Mo. 309, 36 S. W. 648; *Tomlinson v. Board of Equalization*, 88 Tenn. 1, 12 S. W. 414, 6 L. R. A. 207.

Counsel for appellant make some contention that, even though the record before us is not such as to enable us to make or direct the superior court to make a final determination as to the correct assessable value of the relator's operating property, the allegations of the complaint show arbitrary action on the part of the board of equalization, and that it is, therefore, entitled to have that question adjudicated by the superior court in its favor, and the proceedings remanded to the board of equalization with directions to proceed to hear appellant's offered evidence touching the value of its property and make a valuation thereof as its judgment may then dictate. By the provisions of Rem. & Bal. Code, § 9204 (P. C. 501 § 159), the state board of equalization is required to meet on the first Monday in September in each year. It is provided therein that "they shall remain in session not to exceed twenty days." It is apparent that the state board of equalization met and adjourned in the year 1912, in pursuance of this provision, before the commencement of this proceeding. When it adjourned it was dissolved by operation of law for that year. We cannot see our way clear to direct the remanding of the proceedings to that board in view of this situation. It is apparent, however, from our previous decisions that appellant is not without remedy, if in fact it has been wronged by arbitrary and unlawful action of the state board of equalization. *Andrews v. King County,* 1 Wash. 46, 23 Pac. 409, 22 Am. St. 136; *Templeton v. Pierce County,* 25 Wash. 377, 65 Pac. 553; *Miller v. Pierce County,* 28 Wash. 110, 68 Pac. 358; *Dickson v. Kittitas County,* 42 Wash. 429, 84 Pac. 855; *Case v. San Juan County,* 59 Wash. 222, 109 Pac. 809; *Metropolitan Bldg. Co. v. King County,* 62 Wash. 409, 113 Pac. 1114, Ann. Cas. 1912 C. 943; *Savage v. Pierce County,* 68 Wash. 623, 123 Pac. 1088.

An original action on the equity side of the court, where evidence may be received bearing upon the merits of the question of the proper amount of the relator's assessment, as well as the alleged arbitrary and unlawful action of the board of

equalization, is, in our opinion, the only practical remedy available to the relator, since the board of equalization for 1912 has been dissolved, and the proceedings before that board do not show sufficient facts to enable the court to determine the proper amount of assessment to put upon the relator's property as a basis for computing taxes payable by it.

We conclude that the judgment of the learned trial court quashing the writ and dismissing the cause must be affirmed.

It is so ordered.

MOUNT, ELLIS, MORRIS, FULLERTON, and MAIN, JJ., concur.