[No. 16306.   Department Two.   May 13, 1921.]

EDNA HASKELL CARLETON, *Respondent*, v. BOARD OF
POLICE PENSION FUND COMMISSIONERS,
*Appellant.*[1]

MUNICIPAL CORPORATIONS (81-1, 86)—EMPLOYEES—PENSIONS AND
BENEFIT FUNDS—POWERS OF COMMISSION—REVIEW BY COURTS. In cer-
tiorari proceedings to review the action of a board of police pension
fund commissioners in denying an application for a pension, the su-
perior court, under Rem. Code, §§ 1009, 1010, has no power to receive
original evidence and make findings thereon, its jurisdiction to re-
view the proceedings of the board as an inferior tribunal being
limited to the record of such proceedings.

SAME. Where a board of police pension fund commissioners is
vested with jurisdiction to grant or deny pensions under Rem. Code,
§§ 8078-8089, upon the taking of testimony in the same manner as
courts of record, it has no power, in determining an application for
a pension, to refuse to receive testimony and act upon the board
members' personal knowledge of the facts.

Appeal from a judgment of the superior court for
King county, Frater, J., entered October 28, 1920, upon
findings in favor of plaintiff, in an action to obtain a
pension, tried to the court. Reversed.

*Walter F. Meier* and *Charles T. Donworth,* for ap-
pellants.

*James E. Seargeant,* for respondent.

MITCHELL, J.—The statute (Rem. Code, § 8078) au-
thorizes the creation of a board of police pension fund
commissioners. Section 8080 creates and provides for
the maintenance of a pension fund. Section 8084 pro-
vides that whenever a member of the police depart-
ment of a city shall lose his life through violence while
actually engaged in the performance of his duty as a
police officer, his widow, etc., shall be entitled to a

[1]Reported in 197 Pac. 925.

yearly pension of one-third of the amount of salary attached to the rank which such policeman held at the time of his death. Section 8085 provides that whenever a member of the police department shall, after five years' service in the police department, die from natural causes his widow, etc., shall be entitled to $1,000 from such fund. Section 8089 provides, among other things:

"The board herein provided for shall, in addition to other powers herein granted, have power: First: To compel witnesses to attend and testify before it and upon all matters connected with the operation of this chapter, in the same manner as is or may be provided by law for the taking of testimony in courts of record in this state, and its president or any member of said board may administer oaths to such witnesses."

On or before December 1, 1919, Edna Haskell Carleton made an application to the board of police pension fund commissioners of Seattle as follows:

"Edna Haskell Carleton being first duly sworn on oath deposes and says: that she is the widow of Guy L. Carleton, deceased, who was formerly a member of the police department of the city of Seattle, Washington; that said Guy L. Carleton was first appointed policeman December 4th, 1908; that thereafter on the 6th day of January, 1917, he was made a sergeant of the police and continued in that capacity until the 2nd day of November, 1919, on which day and date he died at Seattle, King County, Washington.

"That affiant Edna Haskell Carleton and the said Guy L. Carleton were married in Seattle, Washington, on the 25th day of July, 1907, and lived together as husband and wife from that date until the time of the death of said Guy L. Carleton; that there is one child, Thomas Payne Carleton, born of the union of this affiant and the deceased, Guy L. Carleton, said child being of the age of twelve (12) years; that such child resides with and is under the care and custody of this affiant.

"This affidavit is made for the purpose of obtaining the sum of one thousand ($1,000) dollars from the police pension fund of the city of Seattle, or any other sum or sums that it may appear that the affiant and her minor son are entitled to."

The board rejected her application, whereupon, without notice to it, she applied to the superior court for a writ of review. In her application for the writ, she set out the facts fully including the proceedings before the board, alleging, however, that her husband lost his life through violence while actually engaged in the performance of his duties as a police officer, and further alleged that the board had refused to allow her to introduce any proof in support of her claim. She asked for a review and also that she be allowed to introduce evidence in the superior court, as if the case were originally triable in that court. Upon an order made, a writ of review was issued and served upon the board. The board made and filed a properly certified return to the writ showing, among other things, as follows: (1) The filing with the board of the application for a pension; (2) minutes of the meeting of the board on December 1, 1919, viz: "Mrs. Edna H. Carleton's claim of $1,000 for the death of her late husband Sergeant G. L. Carleton was disallowed by unanimous vote on motion of Sergeant Gus Hasselblad, seconded by Sergeant P. F. Keefe, case being provided for in statute"; (3) written notice on December 3, 1919, to Mrs. Carleton of the rejection of her claim; (4) receipt by the board on May 3, 1920, of written request of Mrs. Carleton for a rehearing of her application because of new evidence secured by her, and the granting of the request by the board; (5) notice June 1, 1920, to Mrs. Carleton that a rehearing had been ordered and fixing date therefor; (6) a regular meeting of the board on August 2, 1920, at which

"Mrs. Edna Carleton appeared before the board with attorney H. A. Northrop, asking the board to reconsider claim for $1,000 insurance. The board by unanimous vote sustained its former decision, on motion of A. F. Haas, seconded by G. V. Hasselblad."

Upon the filing of the return, the superior court, over the objections of the board, received original evidence, beyond the return, on the part of the relator therein, at the conclusion of which, findings and conclusions were made and entered, among others, that G. L. Carleton lost his life by violence while engaged in the performance of his duty as a police officer, at which time his salary was $2,100 per annum, and that the relator Edna Haskell Carleton, widow, was entitled to a yearly pension of $700 to be paid out of the pension fund of the city. From a judgment entered upon the findings, the board has appealed.

The right to such a pension has been created by statute, whereby the legislature has provided for a special board or tribunal and vested it with power and authority to determine the rights of applicants, and to order and direct payments out of the pension fund. In the discharge of its duties, it exercises judicial functions. It is required (Rem. Code, § 8088) to keep a record of its proceedings, which shall be a public record. It has the power (§ 8089) to compel the attendance of and administer oaths to witnesses, and to provide for the payment from the pension fund of all necessary expenses and printing. The jurisdiction to hear and determine such applications is in the board of police pension fund commissioners, not in the superior court.

Counsel for appellant urges that we hold in favor of the finality of the decision of the board. We decline to pass upon that question in this case, for whether its decisions are conclusive or not under the policy of the statutes there remains the right of certiorari, since the

act does not provide for appeals from the decisions of the board. Upon this point, in the case of *State ex rel. Wolcott v. Boyington,* 110 Wash. 622, 188 Pac. 777, which involved a decision of the civil service commission of the city of Spokane acting under a law which provided: "the decisions of the commission shall be final," by certiorari proceedings in the superior court of that county, we said:

"Stated generally, we think it may safely be said that the subject of inquiry by the courts touching such cases is not whether they have been decided rightly or wrongly by the special tribunal created by law to decide them, but whether or not the city authorities, including the special tribunal, have proceeded in the manner prescribed by law, in this case the city's charter."

See, also, *Crouch v. Ross,* 83 Wash. 73, 145 Pac. 87.

The application made in this case to the superior court was sufficient to authorize the order for, and issuance of, a writ of review. Upon the return, however, the trial court proceeded erroneously. It should have proceeded upon the return. Its power was limited by the terms of Rem. Code, § 1009, which says:

"When a full return has been made, the court must hear the parties, or such of them as may attend for that purpose, and may thereupon give judgment, either affirming or annulling or modifying the proceedings below."

In the face of this limited power, the trial court proceeded anew and heard and determined favorably to the relator a case which had not been presented to the special tribunal. It heard and decided that Sergeant G. L. Carleton lost his life through violence while actually engaged in. the performance of his duty as a police officer, and adjudged his widow entitled to recover accordingly; while the application she had made to the board, as shown by its return, was for a pension

of $1,000 because of the death of her former husband from natural causes after five years' service in the department of which he was a member at the time of his death.

"It seems clear that our statutory certiorari and review proceeding contemplates a review in the courts of the proceeding had in an inferior tribunal only upon the record of such proceeding made therein, and that such review is in no sense a trial *de novo* of the questions determined by the inferior tribunal sought to be reviewed." *State ex rel. Spokane & I. E. R. Co. v. Board of Equalization,* 75 Wash. 90, 134 Pac. 695.

Upon the filing of the return of the board, the court should have heard it upon its merits, for which purpose Rem. Code, § 1010, provides:

"The questions involving the merits to be determined by the court upon the hearing are: 1. Whether the body or officer had jurisdiction of the subject matter of the determination under review; 2. Whether the authority, conferred upon the body or officer in relation to that subject matter, has been pursued in the mode required by law, in order to authorize it or him to make the determination; 3. Whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the relator; 4.   . . . ; 5.   . . . ."

It has already been noticed that the statutes vested the board with jurisdiction of the subject-matter. The answer to the question, if the board pursued its authority in the mode required by law, and in making its order rejecting the application violated any rule of law affecting the rights of the parties to the prejudice of the relator, depends upon an understanding of the legal effect of the proceedings before the board as shown by its certified return. After Mrs. Carleton was advised she had been granted a rehearing, the

19—115 WASH.

minutes of the meeting of the board on August 2, 1920, show that she appeared before the board with her then attorney and orally formally requested a reconsideration of her claim; whereupon and at once, the board by unanimous vote sustained its former decision. The former decision referred to manifestly means that of December 1, 1919, when her claim was disallowed without the taking of any proof, and without even the presence of the applicant or her representative. To immediately vote to sustain its former decision, upon the oral request of the applicant at the last meeting to reconsider the claim, must, we think, be taken as equivalent to the refusal or failure of the board to hear any evidence upon the subject at all. The attitude of the board and its good faith are explained by the arguments of its counsel who say:

"The main facts concerning the death of Sergeant Carleton were well known to many members of the board, and in fact, were more or less matters of common knowledge in the police department. For this reason the board took no evidence at the time it first passed on the respondent's application for a pension."

Evidently, it was the same source of information that prompted the board on the last occasion to fail to hear any testimony, and reaffirm its former holding. In doing so it did not pursue the authority conferred upon it in the mode required by law. The law (Rem. Code, § 8089), provides for compelling witnesses to attend and testify "in the same manner as is or may be provided by law for the taking of testimony in courts of record in this state." That is, there is to be a hearing in the common ordinary way and manner at which the applicant may give her evidence in support of her claim. The situation called for the determination of questions of fact of which the members of the board,

performing judicial functions were the triers. In the discharge of that duty, it is clear from the statute that, the members of the board could not act upon their personal knowledge of the facts (*People ex rel. Haines v. Smith*, 45 N. Y. 772) but were called upon to allow the applicant's testimony before finally disposing of the matter. It will be observed the application to the superior court must be considered as one not to compel the board to hear evidence, but one to determine if the board had properly proceeded in the exercise of its authority. If compulsion is required some other remedy must be resorted to.

Our conclusion is that the judgment appealed from must be and it is reversed with directions to the lower court to enter a judgment annulling the order and decision of the board made on August 2, 1920, by which the application was rejected without the taking of testimony.

PARKER, C. J., TOLMAN, and MOUNT, JJ., concur.