[No. 5967–1. Division One. May 14, 1979.]

THOMAS JEFFERS, *Respondent,* v. THE CITY
OF SEATTLE, *Appellant.*

FARRIS, J., concurs by separate opinion.

*Stafford, Frey & Mertel, A. Richard Dykstra, Keller, Rohrback, Waldo & Hiscock,* and *David F. Hiscock,* for appellant.

*Lasher, Johnson & Sweet, Earl P. Lasher III,* and *Linda Eberson,* for respondent.

*Slade Gorton, Attorney General, Wayne L. Williams, Assistant,* and *Kenneth A. Cole,* amici curiae.

DORE, J.—The defendant City of Seattle appeals a jury verdict awarding plaintiff, a retired police officer, $60,000 on a claim of intentional infliction of emotional distress, and $10,000 for a claim of invasion of privacy arising out of an investigation of his police disability pension. We reverse and remand.

ISSUES

1. Does the disability board, created under RCW 41.26-.110, have authority in performing the function delegated by RCW 41.26.140 to seek objective evidence of claimant's

physical condition, or is the disability board's consideration of a claim limited to the report of its physician who must rely largely or entirely upon the claimant's subjective description of his symptoms?

2. May the disability board, in a semiannual reexamination of the disability retiree, delegate the investigatory duty of seeking evidence to be presented to the board, or must the disability board members act as investigator, prosecutor and judge under the requirement of RCW 41.26.140?

3. Did the court err in instructing that the defendant City of Seattle had the burden of proving that its actions and conduct were not intentionally or recklessly aimed at inflicting severe personal distress?

4. Did the court err in instructing that the defendant City of Seattle had the burden of proof to show that plaintiff waived his constitutional right to privacy?

5. Did the court err in refusing to instruct that the video-taping of the actions of plaintiff would not constitute an invasion of privacy unless the plaintiff had a reasonable expectation of privacy?

## STATEMENT OF FACTS

Plaintiff Jeffers is a former City of Seattle police officer who sought and, in February of 1974, was retired for disability because of a neck condition, proved primarily by his subjective complaints. While he was on disability leave and after he retired, he worked as a self–employed electrical contractor. The Police Pension Board asked the police department to conduct an investigation of plaintiff to determine the validity of plaintiff's disability. The investigation included surveillance attempts in public places, conversations with neighbors and business associates to determine the nature of his physical activities, requesting and receiving records of the amount of electrical supplies that he purchased while on limited duty assignment with the police department, and included a video–taping of his activities in installing an electric baseboard heater in the office of the Chief of Police of Issaquah. The plaintiff

claimed in his present suit that the acts of the Police Pension Board through conducting the investigation of the Seattle Police Department were acts that constituted an invasion of his right to privacy, and an intentional infliction of emotional distress. The jury agreed and returned a verdict in his favor.

On appeal, the City of Seattle contends that (1) the trial judge improperly instructed the jury that the Police Pension Board had no authority to hire outside people, such as the Seattle Police Department, to conduct such an investigation, and (2) the Police Pension Board's jurisdiction was limited to making a determination of continued disability based on medical reports of various doctors only, and that they had no authority to go beyond that. That during the course of the investigation, plaintiff underwent surgery fusing a vertebra of his neck, thereby satisfying the board as to his permanent disability.

## DECISION

ISSUE 1: Disability board has authority to conduct investigations pursuant to RCW 41.26.140.

In deciding the issue relating to the board's investigatory powers, three sections of the act must be considered.

RCW 41.26.110(3) provides:

> The disability boards authorized for establishment by this section shall perform all functions, exercise all powers, and *make all such determinations* as specified in this chapter.

(Italics ours.)

RCW 41.26.130(5) provides:

> A member retired for disability shall, at the discretion of the disability board, be subject to a semiannual medical examination by a physician approved by the disability board prior to his attainment of age fifty.

RCW 41.26.140(1) provides:

> Upon the basis of a semiannual reexamination of members on disability retirement, the disability board shall *determine* whether such disability beneficiary is

still unable to perform his duties either physically or mentally for service in the department where he was employed.

(Italics ours.)

RCW 41.26.140(2) provides:

If the disability board *shall determine* that the beneficiary is not so incapacitated his retirement allowance shall be canceled and he shall be restored to duty . . .

(Italics ours.)

In summary, these statutory provisions give the disability board powers (1) to perform all acts and deeds under the act (2) to order retired members to take a semiannual medical examination (3) to require a semiannual reexamination of disabled members, and (4) to cancel the retirement benefits in the event the recipient no longer is incapacitated.

Plaintiff argues that the disability board can only determine the continuation of the validity of a disability award based upon medical examinations of doctors, and has no authority to look beyond the four corners of such reports. If we were to adopt such an interpretation, the disability board would have no function and should be abolished, for in such cases pensions could be granted or denied by the administrator based upon medical examinations. Doctors, in turn, would be bound by the histories and subjective symptoms related to them by members seeking physical disability benefits. Under the statutory language, the legislature obviously gave the authority to the disability board to investigate the possibility that a retiree is malingering and/or giving false answers to the examining physician's questions relating to his subjective symptoms. We note that RCW 41.26.130(5) gives the board authority to require a semiannual medical examination and in an independent section, RCW 41.26.140, that the disability board has been given the right of a semiannual reexamination of members on disability retirement. This latter provision is not restrictive to a medical examination alone.

A recent California case very much in point on this issue is *Cansdale v. Board of Administration,* 59 Cal. App. 3d 656, 130 Cal. Rptr. 880 (1976).[1]

In *Cansdale,* a California Court of Appeals affirmed a ruling of the Board of Administration, Public Employees' Retirement System, canceling a California Highway Patrol officer's disability pension holding that, despite medical evidence in the officer's favor, the board's confirmation of the cancellation of disability retirement was amply supported by the report of a board–appointed orthopedic surgeon, indicating no permanent disability and a full recovery from his injuries, and also by photographs taken by the California Bureau of Investigation of his activities showing that his physical agility was normal. In *Cansdale,* it is interesting that the almost identical investigatory procedure, as in the subject case, was carried out to determine the retired officer's continued disability and agility.[2]

In *Cansdale,* under an almost identical statute, the California court approved the consideration of evidence other than the results of medical examinations. *See also Harmon v. Board of Retirement,* 62 Cal. App. 3d 689, 133 Cal. Rptr. 154 (1976), wherein films of a deputy sheriff

---

[1]The California statute allowed a retirement board to require members on disability retirement to undergo a medical examination. A relevant provision of the statute is as follows:

Upon the basis of such examination the board shall determine whether he is still incapacitated, physically or mentally, for duty . . . where he was employed and in the position held by him when retired for disability, . . .

*Cansdale v. Board of Administration, supra* at 661 n.2.

[2]"Robert T. Raymond testified on behalf of Board. He is employed by the California Bureau of Investigation and is assigned to the Public Employees' Retirement System. He conducted surveillance of Cansdale from July 6, 1970, through July 2, 1972, and saw him 25 times. On nine occasions he was able to photograph Cansdale. The films he took show Cansdale bending, twisting, and reaching while washing windows; doing overhead repairs on his garage door; and his general normal physical agility. Mr. Raymond interviewed administrative personnel at K–Mart, Cansdale's place of employment, where a Mr. Anderson informed Mr. Raymond that Cansdale performs the duties of a store detective and apprehends suspects by himself, and that Mr. Anderson never saw evidence of back disability." *Cansdale v. Board of Administration, supra* at 663.

playing golf were considered relevant evidence as to whether or not he was disabled.

We also should note that RCW 41.26.110(1)(a) provides that cities of the first class "shall *retain . . .* existing boards of trustees of the relief and pension fund of the police department as established pursuant to RCW 41.20-.010 . . ." In other words, the disability board involved in this litigation was not created by RCW 41.26.110. Rather, the then existing board was retained. There is nothing in RCW 41.26.110 which suggests that any of the powers of the then existing board were in any way limited. Rather, they were expanded to include determinations as to the eligibility for benefits pursuant to RCW 41.26.

The disability board has extensive powers granted to them under RCW 41.20.040 and RCW 41.20.100.[3]

These powers certainly allow the disability board to consider evidence other than the result of a medical examination. *Carleton v. Board of Police Pension Fund Comm'rs,* 115 Wash. 572, 197 P. 925 (1921). In fact, the board must make an independent determination under RCW 41.20, of the continued eligibility of the individual for benefits pursuant to that chapter. This determination is required by RCW 41.26.040(2), for the purpose of the comparison of the

---

[3]RCW 41.20.040 provides:

"The board shall, in addition to other powers herein granted, have power:

"(1) To compel witnesses to attend and testify before it upon all matters connected with the administration of this chapter, in the same manner as provided by law for the taking of testimony in courts of record in this state, and its president or any member of the board may administer oaths to such witnesses."

RCW 41.20.100 provides:

"Any person retired for disability under this chapter may be summoned before the board herein provided for, at any time thereafter, and shall submit himself thereto for examination as to his fitness for duty, and shall abide the decision and order of said board with reference thereto; and all members of such police force who may be retired under the provisions of this chapter, shall report to the chief of police of such city where so retired on the first Mondays of April, July, October and January of each year; and in cases of emergency, may be assigned to and shall perform such duty as said chief of police may direct, and such persons shall have no claim against such city for payment for such duty so performed."

benefits provided by the two systems. Obviously, if the disability board determines that the individual is no longer entitled to benefits pursuant to RCW 41.20, then there could not possibly be any excess of benefits payable, pursuant to RCW 41.26.040(2).

We conclude that RCW 41.26.130, RCW 41.26.140, as well as RCW 41.20.040 and RCW 41.20.100, grant the disability board ample authority to consider evidence other than the result of a medical examination, in determining whether a recipient of a disability benefit continues to be disabled.

ISSUE 2: Disability board has authority to delegate investigation of retirees' disabilities.

In the subject case, the evidence indicated that for several years the board had utilized the services of the personnel office of the Police Department to perform preliminary investigations. In August 1978, the Police Department Personnel Division created the position of illness and injury administrator and on September 5, 1973, the board formally wrote to the Personnel Division:

This will confirm our mutual understanding promulgated at the meeting of Pension Board members and members of the Administration of the Seattle Police Department 9–5–73 delegating the Personnel Division of the SPD to investigate and administer disability leave Rules and Regulations as printed in G.I.B. 73–33.

s/ Donald D. Trapp
Assistant Secretary

At this time, plaintiff was working on limited duty. Though the delegation only referred to "disability leave," the testimony was uncontradicted that the board intended and approved Lieutenant Campbell's investigation of disability–retired members, including the plaintiff when he retired in February of 1974. The board's delegation was proper.

■■ In *In re Puget Sound Pilots Ass'n,* 63 Wn.2d 142, 145–46, 385 P.2d 711 (1963), the rule on delegation is stated as follows:

"The rule is well stated in 42 Am. Jur., Public Administrative Law § 73, as follows:

"'It is a general principle of law, expressed in the maxim "*delegatus non potest delegare,*" that a delegated power may not be further delegated by the person to whom such power is delegated. Apart from statute, whether administrative officers in whom certain powers are vested or upon whom certain duties are imposed may deputize others to exercise such powers or perform such duties usually depends upon whether the particular act or duty sought to be delegated is ministerial, on the one hand, or on the other, discretionary or quasi–judicial. *Merely ministerial functions may be delegated to assistants whose employment is authorized,* but there is no authority to delegate acts discretionary or quasi–judicial in nature. . . .'

(Italics ours.) (The court, quoting herein from the trial judge's memorandum opinion.) *Accord, Storey v. Seattle,* 124 Wash. 598, 604, 215 P. 514 (1923).

"Ministerial acts" have been specifically held to include gathering, collating, and presenting facts. In *Pierce v. Lake Stevens School Dist. 4,* 84 Wn.2d 772, 529 P.2d 810 (1974), the court held that a school board may properly delegate to administrative staff, including building principals, the authority to gather information and make recommendations as to which teaching positions should be eliminated:

In *Ledgering v. State,* 63 Wn.2d 94, 100, 385 P.2d 522 (1963), we recognized that gathering, collating and presenting such facts as may be required by an officer charged with a statutory duty, as well as the making of appropriate recommendations, are without doubt delegable duties.

*Pierce v. Lake Stevens School Dist. 4, supra* at 783.

■ As with school boards, the Police Pension Board has no practical or feasible way for the members to gather the information as to which disability retirees should be

returned for reexamination. They meet monthly, and are otherwise employed. Moreover:

The employment of an agent need not in all cases be by formal ordinance, by law, or resolution, nor is it essential, unless the law so requires, that such contract be in writing. It may arise by implication or by ratification of acts done by an agent.

3 E. McQuillin, *The Law of Municipal Corporations* § 12.129 (3d ed. 1973). The statute must be construed reasonably to permit the delegation to the police department of the authority to perform the ministerial acts. We hold that the disability board had authority to hire its own investigative agents or the Seattle Police Department to make investigations for them as to the plaintiff's disability. In any event, the City of Seattle needs no delegation of authority from one of its own agencies to another. The Police Department officers had the right or duty to make reasonable investigations wherever there is suspicion of unlawful activity. The officers need not have probable cause, nor is an investigation invalid because no charge is eventually brought. The court erred as a matter of law in failing to rule that the defendant had authority to conduct a reasonable investigation of plaintiff. Specifically, the court erred in failing to give defendant's requested instruction No. 18, which would have advised the jury on the City's independent authority to make the investigation apart from any delegation. Refusal to give this instruction prevented the defendant from arguing its theory of the case. A party is entitled to have his theory of the case presented to the jury and failure to give a requested instruction which does so is reversible error. *Lewis v. Harris,* 8 Wn. App. 841, 509 P.2d 396 (1973).

We conclude that court instructions Nos. 15 and 17 pertaining to the disability board's authority and investigatory powers constituted prejudicial error, for the reasons expressed herein. Plaintiff's judgment should be reversed and a new trial ordered.

## OTHER ERRONEOUS INSTRUCTIONS SHOULD NOT BE REPEATED ON RETRIAL

ISSUE 3: City does not have burden of proving its actions were not reckless.

 Instruction No. 4 provided: "The defendant has the burden of proving that its actions and conduct were not intentionally or recklessly aimed at inflicting severe emotional distress upon plaintiff." This burden of proof was on the plaintiff, not the defendant. *Grimsby v. Samson,* 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R.3d 436 (1975). It is axiomatic the plaintiff has the burden of proof by a preponderance of the evidence in every element essential to his cause of action. *Palmer v. Huston,* 67 Wash. 210, 121 P. 452 (1912). The burden does not satisfy the requirement the defendant disprove an element of the plaintiff's case. "Lack of affirmative proof of a vital fact may not be cured by the opposing litigant's failure to prove the negative thereof." *Emerick v. Bush,* 36 Wn.2d 759, 763, 220 P.2d 340 (1950).

ISSUE 4: City does not have burden of proving plaintiff waived his right to privacy.

The court erred in instructing (instruction No. 4) that defendant had the burden of proving that plaintiff waived his right to privacy. Defendant pleaded as an affirmative defense that the plaintiff had waived any cause of action based on his right of privacy. The right of privacy, like any other personal right, may be waived, and such waiver bars any claim for damages. *See Almy v. Kvamme,* 63 Wn.2d 326, 387 P.2d 372 (1963). In *Forster v. Manchester,* 410 Pa. 192, 189 A.2d 147 (1963), the plaintiff had been involved in an automobile accident and claimed personal injuries. The other driver's insurance company had hired the defendant, a private investigator, to investigate her activities. In the course of his investigation, the defendant followed the plaintiff in his automobile, kept plaintiff's house under surveillance, and took still pictures of the plaintiff. The plaintiff brought an action for breach of privacy and intentional

infliction of emotional distress. Concerning the plaintiff's interest in privacy, the court stated:

> In determining the extent of the interest to be protected, we must take cognizance of the fact that appellant has made a claim for personal injuries. Although the so–called "public figure" limitation upon the right to privacy has generally been applied to such persons as actors, public officials, and other newsworthy persons, its rationale also applies to a person who makes a claim for personal injuries. It is not uncommon for defendants in accident cases to employ investigators to check on the validity of claims against them. Thus, by making a claim for personal injuries appellant must expect reasonable inquiry and investigation to be made of her claim and to this extent her interest in privacy is circumscribed. It should also be noted that all of the surveillances took place in the open on public thoroughfares where appellant's activities could be observed by passers–by. To this extent appellant has exposed herself to public observation and therefore is not entitled to the same degree of privacy that she would enjoy within the confines of her own home.

*Forster v. Manchester, supra* at 196–97. The court held that any claim for breach of privacy of intentional infliction of emotional distress was waived as a matter of law. *See also Ellenberg v. Pinkerton's, Inc.,* 130 Ga. App. 254, 202 S.E.2d 701 (1973); *Alabama Elec. Coop., Inc. v. Partridge,* 284 Ala. 442, 225 So. 2d 848 (1969); *Tucker v. American Employers' Ins. Co.,* 171 So. 2d 437 (Fla. Dist. Ct. App. 1965).

Also analogous is *McLain v. Boise–Cascade Corp.,* 271 Ore. 549, 533 P.2d 343 (1975), where the plaintiff applied for and was granted workmen's compensation benefits. The benefits were subsequently revoked when one of the examining physicians notified the employer of the results of a myelogram, indicating the plaintiff might be "consciously malingering." In *McLain,* as in the present case, the plaintiff returned to work, complaining he was still experiencing pain. The plaintiff applied for reinstatement of his benefits

and his employer hired a private detective to elicit information concerning the validity of plaintiff's claim. The detective in *McLain* took motion pictures of the plaintiff as he engaged in various activities around his home.

The *McLain* court upheld the trial court's grant of a nonsuit on plaintiff's claim of invasion of privacy, finding defendant's actions did not amount to "unreasonable surveillance" and "highly offensive to a reasonable man."

■ The plaintiff, by requesting a disability pension and the continuation of it, waived his right of privacy pertaining to his medical condition, providing such investigation is carried on in a reasonable manner. Plaintiff cannot recover for emotional distress caused by a reasonable investigation.

ISSUE 5: Video–taping proper unless plaintiff had reasonable expectation of privacy.

The trial court also erred in giving instruction No. 12 pertaining to the video–taping of plaintiff's actions in the office of Chief of Police of Issaquah. Such instruction provided:

> Police officers engaged in "investigatory activity," such as the conduct of an investigation, may record an individual's acts or speech by electronic means such as a tape recorder or video–tape equipment, if in a public place.

In *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), the Supreme Court established the principle that the right of privacy protects persons, not places. In that case a conviction was obtained using a recording of a conversation in a public telephone booth. The court ruled that the recording was an unreasonable search and seizure prohibited by the Fourth Amendment. The court noted that characterization of the phone booth as either "public" or "private" was not the significant inquiry:

> Because of the misleading way the issues have been formulated, the parties have attached great significance to the characterization of the telephone booth from which the petitioner placed his calls. The petitioner has

strenuously argued that the booth was a "constitutionally protected area." The Government has maintained with equal vigor that it was not. But this effort to decide whether or not a given "area," viewed in the abstract, is "constitutionally protected" deflects attention from the problem presented by this case. For the Fourth Amendment protects people, not places. *What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See Lewis v. United States, 385 U.S. 206, 210 [17 L. Ed. 2d 312, 315, 87 S. Ct. 424]; United States v. Lee, 274 U.S. 559, 563 [71 L. Ed. 1202, 1204, 47 S. Ct. 746]. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.*

(Footnotes omitted. Italics ours.) *Katz v. United States, supra* at 351. *Katz* developed the test of "reasonable expectations of privacy" as the test to be applied to determine whether an individual's constitutional right of privacy has been breached. For example, in *United States v. White,* 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971), the court upheld the radio transmission of conversations between the defendant and a government informant. The court noted that *Katz* was inapplicable because in *White* the defendant did not have a protectable expectation that his conversations with the informant would not be revealed by the informant. In this the court relied upon *Hoffa v. United States,* 385 U.S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408 (1966). The court went on to note that the mere fact of recording and transmission of the conversation did not make an otherwise unprotected conversation suddenly "private."

> If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when the same agent has recorded or transmitted the conversations which are later offered in evidence to prove the state's case.

*United States v. White, supra* at 752.

█ Our state has consistently applied similar principles. In *State v. Jennen,* 58 Wn.2d 171, 361 P.2d 739 (1961), the court upheld the admission of a policewoman's testimony as

to a conversation she overheard on an extension telephone between the defendant and the prosecuting witness. The court cited as dispositive *Rathbun v. United States,* 355 U.S. 107, 111, 2 L. Ed. 2d 134, 78 S. Ct. 161 (1957):

"Common experience tells us that a call to a particular telephone number may cause the bell to ring in more than one ordinarily used instrument. Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. *When such takes place there has been no violation of any privacy of which the parties may complain.*

(Italics ours.) *State v. Jennen, supra* at 174.

Briefly, as Prosser points out, a person's protectable interest in privacy in fact incorporates at least four separate and distinct types of interests (intrusion, disclosure, false light and appropriation). Concerning freedom from intrusion, the interest involved in the present action, Prosser states:

It is clear, however, that there must be something in the nature of prying or intrusion, . . . It is clear also that the intrusion must be something which would be offensive or objectionable to a reasonable man, . . . *It is clear also that the thing into which there is intrusion or prying must be, and be entitled to be, private.* The plaintiff has no right to complain when his pretrial testimony is recorded, or when the police, acting within their powers, take his photograph, fingerprints or measurements, or when there is inspection and public disclosure of corporate records which he is required by law to keep and make available. On the public street, or in any other public place, the plaintiff has no legal right to be alone; and it is no invasion of his privacy to do no more than follow him about and watch him there. *Neither is it such an invasion to take his photograph in such a place, since this amounts to nothing more than making a record, not differing essentially from a full written description, of a public sight which anyone would be free to see.*

(Italics ours.) W. Prosser, *The Law of Torts,* 808 (4th ed. 1971). Though Prosser and the cases frequently use "public

places" to illustrate limitations upon the tort interest in privacy, logically, a person's interest of privacy does not depend upon whether the place is "public." This is illustrated by Prosser's statement that "the thing into which there is intrusion or prying must be, and be entitled to be, private." If a person doesn't have a reasonable expectation of privacy, then his interest isn't protected even if the person is not in a "public" place. Conversely, as Prosser recognizes "even in a public place, there can be some things which are still private."

We conclude that the test of privacy is not whether plaintiff was in a public or private place but rather, whether plaintiff had a reasonable expectation of privacy at the time of the video–taping of his activities in the office of the Chief of Police of Issaquah.

Reverse and remand for new trial in accordance with provisions of this opinion.

FARRIS, J. (concurring)—I concur in the result.

JAMES, J., concurs with FARRIS, J.

Reconsideration denied October 25, 1979.