[No. 30269. Department One. January 23, 1948.]

EDWARD E. DARNELL, *Respondent*, v. THE CITY OF SEATTLE, *Appellant*.[1]

*A. C. Van Soelen* and *Glen E. Wilson*, for appellant.

*Chavelle & Chavelle*, for respondent.

SCHWELLENBACH, J.—This is an appeal from a decree ordering the appellant to reform its records to show that respondent was, as of the date of the decree, a policeman of the police department of Seattle, and that the police

[1]Reported in 189 P. (2d) 243.

pension fund commissioners forthwith retire him as physically disabled, and that he be granted his police pension.

Edward E. Darnell entered the Seattle police department as a policeman February 6, 1919. Several years later, while still serving the department, he developed sinus trouble. His forehead and the gland on one side of his neck became swollen. Most of the time his eyes were swollen shut. He had difficulty breathing, could not sleep lying down, and was in bed about two weeks out of three. An operation was performed on his sinuses, which helped for a time. But his condition continued to get worse, and finally the doctors recommended a change of climate.

He went east of the mountains, and the warm, dry climate over there gave him almost instantaneous relief. He first went to eastern Washington in 1939, and remained about eight months. He resigned from the department November 10, 1939. After recovering sufficiently, he requested leave to withdraw his resignation and go back to work. This was granted, and he went back to Seattle for about a year. But about half of the time during that year, he was ill. Because of this, he returned to eastern Washington and filed an application for a pension. This was in July, 1941. Accompanying the application were letters from Dr. Grinstein and Dr. Palmer (who had attended him), both to the effect that he was physically disabled, but he did not submit a certificate from the city health officer as to his condition.

On July 11, 1941, the pension board wrote him as follows:

"Pension                                    July 11th, 1941.
"'Mr. E. E. Darnell,
"1306 1st West. Apt. No. 307.
"City.
"Dear Sir:

"At the meeting of the Board held on Tuesday, July 8th, your disability retirement as of June 16th, after an absence from active duty totaling 201 days, which is 18 days more than the six months period provided by the Pension Act, was not approved, there appearing to be insufficient evidence of disability to justify approval of disability retirement from active service in either of the certifications as submitted by the two physicians.

"SECTION 9581 of the PENSION ACT is herewith quoted:

" 'No person shall be retired ......................., or receive any benefit from said fund, unless there shall be filed with said board certificate of his disability, which certificate shall be subscribed and sworn to by said person, and by the city physician (if there be one) and two regularly licensed and practicing physicians of such city, and such board may require other evidence of disability before ordering such retirement and payment as aforesaid.'

"You are directed to call on Dr. F M Carroll, Commissioner of Health, as required by law, for his certification as to your disability and unability to resume active duty or ability to continue active service as a Patrolman, upon receipt of which the matter will again be taken up at the next regular meeting of the Board.

"Yours truly,
"BOARD OF POLICE PENSION FUND COMMISSIONERS.
"By
"Asst. Secty."

He did not return for further examination until October. At the meeting held October 7, 1941, Dr. Carroll, city health officer, submitted his report.

"Mr. T. K. Wild, Asst. Secretary     October 7, 1941
"Board of Police Pension Fund Commissioners
"Seattle, Washington
"Dear Mr. Wild:

"I am enclosing a report of Dr. Weir after examination of Mr. E. E. Darnell. From his findings and report, this department cannot find evidence enough for disability retirement of Mr. Darnell.

"Respectfully,
"/s/ Frank M Carroll
"Frank M. Carroll, M. D.
"Commissioner of Health"

Attached to this letter was the following:

"Name—E. E. Darnell          Seattle, Washington
Address—                      October 7, 1941
Report of Examination
The patient asserts he has great pain in his head at times.
Applicant has been examined twice
The last time with Xrays taken by our Xray Operator
Nose—negative as regards any inflammation; breathing free and easy

Throat—negative

Ears—negative

Xray plates—disclose no marked *irregularity* in sinus cavities

Objective symptoms are not sufficient to recommend a pension. /s/ C. H. Weir M D"

The board then sent him the following letter, enclosing a blank Request for Leave of Absence and a Resignation:

"Mr. E. E. Darnell, Oct. 7th, 1941

"Addy, Wash.

"Dear Sir:

"At the meeting of the Board held this date your disability retirement request was denied by unanimous vote there being insufficient evidence in the certifications of the examining physicians to legally grant such disability retirement.

"Your absence from active duty since June 16th, after a period of more than six months absence because of illness, and your long delay in furnishing the necessary physicians reports required for action on a disability retirement has place your civil service standing, if any, on a very precarious basis and it is suggested you report in person to the Assistant Chief of Police at once for return to active duty, or resign from the department, or possibly the Chief of Police might approve an extended leave of absence request to the Civil Service Commission if requested by you.

"Please give this matter your immediate attention as further delay will necessitate a permanent separation report being made by the department to the Civil Service Commission. Yours truly,

"BOARD OF POLICE PENSION FUND COMMISSIONERS.

"By (signed) T I Wild

"Asst. Secty.

Copy to: Chief

Asst Chief

Encl: Resignation blank

Leave of absence request blank."

On October 20, 1941, the secretary of the civil service commission wrote Chief Kimsey:

"Re: Patrolman E. E. Darnell October 20, 1941

"Chief H. D. Kimsey

"Police Department

"City of Seattle

"Dear Chief:

"Referring again to the status of Patrolman E. E. Darnell, we have this day received copy of a letter from the Board of Police Pension Fund Commissioners to Mr. Darnell in which they denied him disability retirement, the letter indicating that a copy was sent to you.

"Will you please give this matter your attention, and make some final disposition of this case in order that we may close our files thereon? It would seem that a separation report or dismissal for being absent without leave, effective June 15, 1941, would be in order at this time.

"Your prompt attention to this matter will be appreciated.

"Very truly yours,
"/s/ R A Palm
"Roy A. Palm, Secretary
"Civil Service Commission"

Chief Kimsey had written the commission on July 28, 1941, as follows:

"Division *Chief*                                   July 28th, 1941
"Our No *E E Darnell*
"Your No *7-22-1941*
"Civil Service Commission,
"City of Seattle.
"Gentlemen:

"On June 24th E E Darnell, Patrolman, after a period of absence from active duty totaling more than six months, was reported to you as separated by this department as 'Retired account disability—Subject to approval of Pension Board' there being no authority for continued payment of active salary.

"Before disability retirement of any member can be authorized by the Pension Board the law (State Act) requires that such disability be certified by two regularly licensed and preacticing physicians and also by the City physician. At the meeting of the Pension Board held on July 8th this retirement account alleged disability was neither approved or denied it being deemed there was insufficient evidence in the two certifications as submitted by the two different physicians to justify such disability retirement and the third certification of disability by the Commissioner of Health was entirely missing.

"On July 9th he was certified to you as 'Withdrawing report of separation dated June 24th', his retirement account disability not having been authorized. His name has not appeared on the active pay roll since June 15th as we

know of no authority for payment of salary beyond the specified six months period as provided in the Pension Act.

"He was notified on July 11th that certification of disability by the Commissioner of Health was required. On July 23rd Dr. Carroll reported he had not as yet appeared for examination. Until such is received not further action can be taken by the Pension Board. If this matter is attended to before the next meeting on August 5th it will again be given consideration.　Yours truly,

"/s/ H. D. Kimsey
"H. D. Kimsey
"Chief of Police.

Copy to E E Darnell,
"Rt. 1, Addy, Wash."

Upon receipt of the letter of October 20, 1941, Chief Kimsey, on October 21, 1941, filed with the civil service commission, a Report of Separation of E. E. Darnell, as of June 16, 1941, with the notation that he had quit.

On November 8, 1941, Mr. Darnell wrote the following letter to Chief Kimsey:

"Chief Kimsy Seattle Police Dept　　　　　Addy Wash
"Dear sir:—　　　　　　　　　　　　　　　Nov. 8, 41
I am in receipt of a letter from the Pension Board in which they have sent me too blanks, one to be filled out for my resignation from the Dept. and the other a request for leave of absense

"I have been the past month in trying to get in shape physically to do one or the other, but it seems impossible to do so

"therefor [sic] after the unfair treatment I have received from the board I will have to notify you that I surly [sic] do not feel justified in complying with either one of these requests. I am also very much hurt and surprised that a man could put in as much time with a Dept as big as the Seattle police Dept and receive so little consideration when he is sick and helpless to defend himself.

"Yours truly,
"/s/ E. E. Darnell
"Addy, Wash."

Chief Kimsey replied:

"H. D. Kimsey
"Chief of Police

THE CITY OF SEATTLE
Washington
Department of Police

"Division ............................           November 13, 1941.
"Our No. ............................
"Your No. ............................
"Mr. E. E. Darnell
"Addy, Washington.
"Dear Sir:

"Received your letter of November 8th.

"As to your status in this department my understanding is that you were 'dropped' as a member. There is nothing else that I can do owing to the action taken by the Pension Board and the Civil Service Commission.

"However when you feel that you can return and place your case before the Civil Service Commission I will recommend such action as the circumstances may justify.

"I am indeed sorry to hear that you are not feeling well and I wish you a speedy recovery. I hope this matter will be straightened out to your satisfaction as soon as possible.

"Yours truly,
"H. D. Kimsey,
"Chief of Police"

Nothing further was done until August, 1944, when Mr. Chavelle, representing Mr. Darnell, presented to the board of police commissioners another application for a pension. The board requested an opinion from the legal department of the city. The corporation counsel advised that the board had no power to reopen and consider, or reconsider, its denial of the claimant's application for a disability pension, basing his opinion on the record and on our ruling in *State ex rel. Worsham v. Brown,* 126 Wash. 175, 218 Pac. 9. The present action was then instituted with the result heretofore announced.

The trial court found that Dr. Weir, the city health officer, acted in an arbitrary and capricious manner and based its decree upon that finding. We do not agree with the trial court for two reasons: first, because the facts do not warrant such a finding; and second, because the su-

perior court does not have authority to overrule the decision of the board merely upon a showing of arbitrary and capricious action on the part of the city health officer.

Dr. Grinstein and Dr. Palmer found that the respondent was physically incapacitated. They based their conclusions on his past history and upon examinations made at times when respondent had been in Seattle for a considerable length of time, and while he was suffering from sinus trouble. When Dr. Weir examined him on October 7, 1941, respondent had been in eastern Washington for several months. The warm, dry climate had cleared up the ravages of his sinus trouble, and, at the time of his examination, Dr. Weir could not honestly find that respondent was then physically incapacitated.

During the examination of Mr. Kimsey, former chief of police, the following occurred:

"THE COURT: Do you have any idea, Chief, why Dr. Palmer and Dr. Grinstein should make such an examination and report of him as would satisfy the Police Department that he was disqualified and entitled to a pension,—why Dr. Weir would take the position that he did? THE WITNESS: My contention is, as has been testified here, as soon as he would go east of the mountains he would clear up, like today he looks better than I have ever seen him look, or for a long time. I have seen him at times when he looked just like he couldn't go another step, and he would be gone for three or four months east of the mountains and come back cleared up. THE COURT: What would be Dr. Weir's purpose—of course he is not a member of the Police Department—to say, 'Well, you have been in a dry climate now, where you have been advised to go, and you have come back and are temporarily all right. If you stay here in this climate west of the mountains where the humidity is so great or high, you will soon become ill again and have to go to a drier climate.' Why would he say the Police Department should put him to work until he got so sick he couldn't stand it any more, and then go to eastern Washington and then come back and be examined, and then say, 'You are all right. You can go to work for a couple weeks and then have to go back to a drier climate again.' Why would Dr. Weir, who is supposed to represent the interests of the public, of the City, take that position, if you know? THE WITNESS: I don't

think he did. I think he took the position that at the time he examined him it had cleared up, and that was his report. I talked to Dr. Carroll about that time. THE COURT: Why wouldn't Dr. Weir say, 'But if you remain here on the Department in this climate for any length of time you will be disqualified, incapacitated again.' THE WITNESS: Probably he was not familiar with the case to that extent. He was probably examining his physical condition as he found it."

Rem. Rev. Stat. (Sup.), § 9583 [P.P.C. § 373-9], and Rem. Rev. Stat., § 9584 [P.P.C. § 373-11], provide:

"Section 9583. Whenever any person, while serving as a policeman in any such city shall become physically disabled by reason of any bodily injury received in the immediate or direct performance or discharge of his duties as such policeman, or become incapacitated for service, said incapacity not having been caused or brought on by dissipation or abuse, of which the board shall be judge, said board may, upon his written request filed with the secretary of said board, or without such written request, if it deems it to be for the benefit of the public, retire such person from said department, and order and direct that he shall be paid from said fund during his lifetime, a yearly pension equal to one-half of the amount of salary attached to the rank which he may have held in said police department at the date of such retirement, but not to exceed one hundred twenty-five ($125.00) dollars per month: *Provided,* That whenever such disability shall cease, such pension shall cease, and such person shall be restored to active service at the same salary he received at the time of his retirement."

"Section 9584. No person shall be retired, as provided in the last preceding section, or receive any benefit from said fund, unless there shall be filed with said board certificate of his disability, which certificate shall be subscribed and sworn to by said person, and by the city physician (if there be one) and two regularly licensed and practicing physicians of such city, and such board may require other evidence of disability before ordering such retirement and payment as aforesaid."

In *Carleton v. Board of Police Pension Fund Com'rs.,* 115 Wash. 572, 197 Pac. 925, the widow of a former employee of the police department of Seattle applied to the pension board for a pension. After a hearing, her application was denied. She then requested a reconsideration, which was

denied without further hearing. Following that action, she asked for a review by the superior court of the proceedings before the board. At that hearing, the court received original evidence and entered findings, conclusions, and a judgment in favor of the petitioner. On appeal, we said:

"The right to such a pension has been created by statute, whereby the legislature has provided for a special board or tribunal and vested it with power and authority to determine the rights of applicants, and to order and direct payments out of the pension fund. In the discharge of its duties, it exercises judicial functions. It is required (Rem. Code, § 8088) to keep a record of its proceedings which shall be a public record. It has the power (§ 8089) to compel the attendance of and administer oaths to witnesses, and to provide for the payment from the pension fund of all necessary expenses and printing. The jurisdiction to hear and determine such applications is in the board of police pension fund commissioners, not in the superior court."

We reversed the judgment of the trial court with directions to annul the order of the board rejecting the application for a rehearing, because that order was based upon the personal knowledge of the members of the board, rather than upon further evidence, saying:

"The law (Rem. Code, § 8089), provides for compelling witnesses to attend and testify 'in the same manner as is or may be provided by law for the taking of testimony in courts of record in this state.' That is, there is to be a hearing in the common ordinary way and manner at which the applicant may give her evidence in support of her claim. The situation called for the determination of questions of fact of which the members of the board, performing judicial functions were the triers. In the discharge of that duty, it is clear from the statute that, the members of the board could not act upon their personal knowledge of the facts (*People ex rel. Haines v. Smith*, 45 N. Y. 772) but were called upon to allow the applicant's testimony before finally disposing of the matter. It will be observed the application to the superior court must be considered as one not to compel the board to hear evidence, but one to determine if the board had properly proceeded in the exercise of its authority. If compulsion is required some other remedy must be resorted to."

In *Luellen v. Aberdeen,* 20 Wn. (2d) 594, 148 P. (2d) 849, we held that, if the proceedings to discharge the policeman are void on their face, he has the right to treat them as a nullity and demand a reinstatement and, if this is denied, then proceed by mandamus, praying that it be adjudged that his discharge was void and that he be entitled to the status of a police officer and that he be reinstated. In the case at bar, the petition prayed that writ of mandamus be issued directing the defendant to reinstate the plaintiff to his former position as a police officer.

In *State ex rel. Chapman v. Edwards,* 161 Wash. 268, 295 Pac. 1017, an action for a writ of mandamus in connection with the firemen's relief and pension fund of the city of Seattle, we indicated that such a writ could issue when it was shown that the *board* acted arbitrarily in the proceedings before it.

"The general rule is well established that the courts cannot review the discretion which has by law been vested exclusively in inferior tribunals, and mandamus will therefore not lie to compel the performance of acts or duties which necessarily call for the exercise of discretion on the part of the officer or board at whose hands their performance is required; because the state has, as in this instance, determined upon and specified the officers upon whose judgment on the questions submitted to them the state is willing to rely. . . .

"But, notwithstanding this, it is equally well established that courts will compel by mandamus the honest performance of official duty, and if, under pretense of exercising discretion, the power is exercised with manifest injustice or is grossly abused, or duty is avoided, the courts will grant relief. The action of the court must, in reality, be based upon the assumption that the inferior tribunal has refused to exercise the discretion with which it is clothed; because, if it acts arbitrarily or fraudulently, or through unworthy or selfish motives, or conspires against the rights of individuals, under the law, and therefore against the law itself, it has not strictly, as is frequently said, 'abused its discretion' —a term which is responsible for some confusion of ideas on this subject—but in contemplation of law, it has not exercised its discretion at all, but has sought to substitute arbitrary and fraudulent disposition and determination of the

question submitted, for the honest discretion demanded by the law. In such cases the law will, by mandamus, compel the tribunal to act honestly and fairly, or, in other words, to *exercise its discretion*; and, when this distinction is kept in mind, the seeming difficulties which have surrounded this question, and which have caused so much discussion, disappear." *State ex rel. Brown v. Board of Dental Examiners,* 38 Wash. 325, 80 Pac. 544.

See, also, 34 Am. Jur. 856, Mandamus, § 68.

The trial court could not, in the instant case, grant the relief prayed for upon a finding, if such had been the case, that the city health officer acted arbitrarily and capriciously. The only finding which would warrant the issuance of a writ, would be that the *board itself* acted arbitrarily and capriciously. We find nothing in the record to indicate that the board acted in other than a fair and impartial manner.

It is unfortunate that a man should serve his department faithfully for twenty-two years, pay into the pension fund during that period, and then not be permitted to retire and obtain a pension. The record discloses that the board was sympathetic towards the respondent and urged him to protect his interests; but this he failed to do. He cannot now look to the courts for relief. The legislature has set up the police pension fund board and conferred upon it the judicial function of trying the facts in matters before it. We cannot review those facts unless it appears that the board acted arbitrarily. We cannot treat the proceedings before the board as a nullity unless it appears, from the record, that the proceedings are void on their face. Here, the proceedings were orderly, regular, and legal.

The court, no matter how strongly it might desire to assist respondent out of the unfortunate position in which he is placed, is powerless to act. Courts have no right to usurp the powers granted by the legislature to the police pension fund board.

The judgment appealed from is reversed, with directions to dismiss the action.

MALLERY, C. J., ROBINSON, JEFFERS, and HILL, JJ., concur.