[Civ. No. 46462. Second Dist., Div. Five. June 29, 1976.]

ALANSON P. CANSDALE, Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent.

[redacted]

## COUNSEL

Silver & Streller and Samuel J. Wells, Jr., for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**HASTINGS, J.**—This is an appeal from a judgment denying the issuance of a peremptory writ of mandate which affirmed a decision of the Board of Administration, Public Employees' Retirement System (Board), respondent, terminating appellant Alanson P. Cansdale's (Cansdale) disability retirement.

On May 4, 1968, Cansdale received a disability retirement as a state traffic officer with the California Highway Patrol (CHP) and remained inactive for three years. He was then reexamined at Board's direction and was found to be recovered and capable of resuming his duties as a state traffic officer, and his retirement was cancelled effective March 1, 1972.[1]

Upon receiving notice of Board's action, Cansdale appealed and requested a hearing. This was held before a hearing officer of the office of administrative hearings. The hearing officer concluded that Cansdale was incapacitated to perform his duties as a state traffic officer and was entitled to disability retirement. Board declined to accept the proposed decision, and elected to decide the matter upon the record. After considering the record, oral, and written arguments, Board issued its decision on December 12, 1973, cancelling Cansdale's disability retirement allowance.

Cansdale filed a petition for writ of mandate in the Superior Court of Los Angeles County, praying that a writ issue ordering Board to set aside its decision. The matter was heard and the administrative record was received in evidence. After submission, the court denied the petition. Subsequently, Cansdale filed his notice of motion to reopen the cause on the basis of newly discovered evidence. It was also denied. There was no request for findings of fact or conclusions of law. Cansdale filed a notice of intention to move for a new trial which Board opposed. The motion was denied. Cansdale then filed this notice of appeal from the judgment denying the writ. He also purports to appeal from the order denying his motion for a new trial.

### STATEMENT OF FACTS

Cansdale was employed by the CHP from July 1, 1957, through May 4, 1968, as a state traffic officer. On July 14, 1967, while on duty as a motorcycle officer, he was struck or side-swiped by an automobile and thrown from his motorcycle at 65 m.p.h., causing injuries. After diagnosis of his injuries by two doctors, Cansdale filed an application for disability retirement and it was determined after a hearing by Board that he was disabled and he was retired for disability effective May 4, 1968, pursuant to section 21025 of the Government Code.

---

[1]Board cancelled Cansdale's retirement allowance pursuant to Government Code section 21029.

In 1971, as part of a program of rehabilitation, Cansdale started to work on a part-time basis for Kresge Company as an assistant security manager. He eventually became security manager for a K-Mart store in Covina. Unbeknownst to Cansdale, an employee of the California Bureau of Investigation assigned to a section dealing with cases for the Public Employees' Retirement System, tailed him off and on for approximately two years in order to obtain photographs of him engaged in activities which might indicate that he was not in fact disabled to perform duties as a California highway patrolman.

On January 17, 1972, pursuant to the provisions of Government Code section 21028,[2] Cansdale was referred to a Dr. Heffler for examination. Based upon Dr. Heffler's report, Board determined that Cansdale had recovered to the extent that he could resume his duties as a CHP officer, and he was so notified on January 28, 1972.

Further facts are developed as they become pertinent to this opinion.

### Cansdale's Arguments on Appeal

1. The decision of the trial court to the effect that Cansdale had completely recovered from his previous ·disability is not supported by substantial evidence in the record.

2. The trial court's decision in not awarding Cansdale benefits for the period prior to its final determination of Cansdale's rights after a hearing was contrary to law.

---

[2]Government Code section 21028, provides: "The board may require any recipient of a disability retirement allowance under the minimum age for voluntary retirement for service applicable to members of his class to undergo medical examination, and upon his application for reinstatement, shall cause a medical examination to be made of any such recipient who is at least six months less than the age of compulsory retirement for service applicable to members of the class or category in which it is proposed to employ him. The board shall also cause such examination to be made upon application for reinstatement to the position held at retirement or any position in the same class, of a person who was incapacitated for performance of duty in such position at the time of a prior reinstatement to another position. Such examination shall be made by a physician or surgeon, appointed by the board, at the place of residence of the recipient or other place mutually agreed upon. Upon the basis of such examination the board shall determine whether he is still incapacitated, physically or mentally, for duty in the state agency, the university, or contracting agency, where he was employed and in the position held by him when retired for disability, or in a position in the same classification, and for the duties of the position with regard to which he has applied for reinstatement from retirement."

3. The trial court erred in not granting Cansdale a new trial on the basis of newly discovered evidence.

## DISPOSITION

1. Cansdale candidly begins his argument by recognizing that he must overcome the "substantial evidence" rule[3] on this first issue. To do this, he cites Labor Code section 3202[4] to the effect that legislative policy in workers compensation cases, and other employee retirement matters, must be liberally construed in the employee's favor, and that therefore we can affirm the court's decision only if it is supported by evidence of "ponderable legal significance." (*Estate of Teed,* 112 Cal.App.2d 638, 644 [247 P.2d 54].) This approach to the problem is to minimize the medical testimony of the Board-appointed doctor, and to maximize the evidence presented by Cansdale's own experts. We disagree with his contention that the evidence relied on by Board did not reach the level of "ponderable legal significance." Tremaine Heffler, M.D.,[5] was called on behalf of Board and examined Cansdale on January 17, 1972. He could find no orthopedic evidence of disability. The only objective sign of disability he found was tight hamstring muscles of the lower legs, which was not related to the accident. These muscles could produce a chronic low back ache but the problem could be cleared up by exercise. Dr. Heffler had X-rays taken of Cansdale which were essentially normal. They did show a small spur, a bone, in the front portion of the body of the L4 vertebrae which had nothing to do with the accident and which had existed years prior to the injury. Dr. Heffler concluded that Cansdale could perform the full duties of a highway patrol officer, that he had no permanent physical disability, and that he had fully recovered from his injuries. Full duties would include physical altercations, pursuit of suspects on foot, and extricating accident victims from automobiles.

---

[3]The function of an appellate court is to review the entire record to determine whether the Board's conclusion is supported by substantial evidence (Lab. Code, § 5952; *Place* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656].)

[4]Labor Code section 3202, provides as follows: "The provisions of [the Workers' Compensation Act] shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

[5]Dr. Heffler is a diplomate of the American Board of Orthopedic Surgery and qualified as a specialist in orthopedic surgery. He treats accident cases of the Inglewood Police and Fire Departments and conducts examinations for the Workers' Compensation Appeals Board as an agreed medical examiner and is on the Board of Independent Medical Examiners.

Dr. Heffler's medical report of January 18, 1972, was received in evidence. That report shows that Dr. Heffler took a comprehensive history of Cansdale and conducted a complete orthopedic examination. Dr. Heffler concluded that no gross orthopedic abnormality could be detected.

Robert T. Raymond testified on behalf of Board. He is employed by the California Bureau of Investigation and is assigned to the Public Employees' Retirement System. He conducted surveillance of Cansdale from July 6, 1970, through July 2, 1972, and saw him 25 times. On nine occasions he was able to photograph Cansdale. The films he took show Cansdale bending, twisting, and reaching while washing windows; doing overhead repairs on his garage door; and his general normal physical agility. Mr. Raymond interviewed administrative personnel at K-Mart, Cansdale's place of employment, where a Mr. Anderson informed Mr. Raymond that Cansdale performs the duties of a store detective and apprehends suspects by himself, and that Mr. Anderson never saw evidence of back disability.

Theodore A. Loseff, M.D., testified for Cansdale. It was his belief that Cansdale suffered from a chronic low back derangement and probably had a herniated lumbar intervertebral disc. His opinion was based primarily on the earlier reports of treating physicians in 1968, and a slight paralumbar muscle spasm that he found. He agreed Cansdale could perform the full duties of a security guard, but not the unrestricted duties of a highway patrolman. He believed that the motion picture films taken by Mr. Raymond reflected activities contrary to the advice of Cansdale's doctors. He did not feel his physical findings were sufficient to recommend surgery.

Richard L. Masserman, M.D., examined Cansdale at the hearing officer's request. He concluded that Cansdale does not suffer from a herniated disc, and he found no direct evidence of any diseased condition of the roots of the spinal nerves. He concluded Cansdale was suffering from a chronic strain of the lumbosacral spine with some mild degenerative disc disease. He stated Cansdale could not perform the duties of a highway patrolman.

Cansdale calls Dr. Heffler's medical opinion inadequate, alleging it ignores subjective symptoms and uncontradicted testimony of Cansdale's experts. Cansdale also claims the doctors did not rely on the pictures

taken by Mr. Raymond in reaching their conclusions; thus, the pictures are irrelevant.

We respond by initially stating the law that governs our decision. ■ " 'The review by the court shall not be extended further than to determine, based upon the entire record . . . whether . . . [t]he order . . . was not supported by substantial evidence.' " (*LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) Findings of the Board will not be disturbed on appeal if they are supported by inferences which are fairly drawn from the evidence. (*Phoenix Indem. Co.* v. *Ind. Acc. Com.,* 31 Cal.2d 856, 859 [193 P.2d 745].) ■ The Board is empowered to resolve conflicts in the evidence and to make its own credibility determination. (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.,* 33 Cal.2d 89, 93-94 [199 P.2d 302]; *McAllister* v. *Workmen's Comp. App. Bd.,* 69 Cal.2d 408, 413 [71 Cal.Rptr. 697, 445 P.2d 313].)

■ Dr. Heffler's opinion was not based on speculation and conjecture. After a thorough examination he found no orthopedic evidence to support Cansdale's claim of disability. Board was entitled to rely on the relevant judgment of a single physician in making its decision, even though the opinion is inconsistent with other medical evidence. (*Le Vesque, supra,* at p. 639.) We do not agree with Cansdale that the pictures were irrelevant. True, Dr. Heffler stated he did not need them in order to make his determination. He did, however, state they confirmed his diagnosis. They also apparently caused Dr. Loseff to modify his opinion.[6]

■ "[I]ncapacitated for the performance of duty" within the meaning of Government Code section 21022 means the *substantial* inability of the applicant to perform his usual duties. (*Mansperger* v. *Public Employees' Retirement System,* 6 Cal.App.3d 873, 876 [86 Cal.Rptr.

---

[6]Mr. Raymond, when questioned by Board's counsel, testified as follows:

"Q. What did Dr. Loseff say about it? [the activity in the film taken by Mr. Raymond]

"A. I have in my report here quotations. I remember verbatim he said, one time he commented, 'That doesn't happen very often' at the end of the film.

"I asked him to amplify that. He said his mind is changed by the pictures. Then we discussed something else for a moment. Then he said, '. . . or, at least, my opinion is modified,' referring again, to the film and his opinion.

"Q. Did he perform any other activity, pursuant to viewing the film, that you know of?

"A. While the film was still being shown he picked up the telephone, dialed a number which I didn't know and he asked to talk to Mr. Greene [Cansdale's counsel]. When he was informed Mr. Greene wasn't there, he said he would contact him later that day."

450].) ■ The report of Dr. Heffler and the pictures amply support Board's decision that Cansdale could substantially carry out the duties of a CHP officer.

2. ■ Cansdale next contends that a predetermination hearing was required before Board could terminate his disability benefits, and if we affirm Board's ruling, he is nevertheless entitled to his benefits from March 1, 1972 (termination of benefits), to December 12, 1973 (final decision by Board).

It is his contention that Government Code section 21029 is unconstitutional because it makes no provision for an opportunity for a hearing before the recipient's disability pension is cancelled. It is true that section 21029 simply provides that, if the Board determines that a recipient is not incapacitated for duty, "his disability retirement allowance shall be canceled . . ." ■ The rule, of course, is well established that before a person may be deprived of any significant property interest, he must be afforded notice and an opportunity for a hearing, e.g., *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337, 342 [23 L.Ed.2d 349, 354, 89 S.Ct. 1820]; *Goldberg* v. *Kelly*, 397 U.S. 254, 264, 266-271 [25 L.Ed.2d 287, 296-297, 298-301, 90 S.Ct. 1011]; *Skelly* v. *State Personnel Bd.*, 15 Cal.3d 194, cases collected at page 208 [124 Cal.Rptr. 14, 539 P.2d 774].

■ Since, however, Cansdale would obviously be entitled to full retroactive relief had he prevailed at the later hearings, "his sole interest is in the uninterrupted receipt of this source of income pending final administrative decision on his claim." (*Mathews* v. *Eldridge* (Feb. 24, 1976) 424 U.S. 319, 340 [47 L.Ed.2d 18, 36, 96 S.Ct. 893].)[7]

---

[7]*Mathews* held, in connection with federal social security disability benefit payments "that something less than an evidentiary hearing is sufficient prior to adverse administrative action." (424 U.S. 319, 343 [47 L.Ed.2d 18, 38].) It is questionable whether our Supreme Court will follow *Mathews*. Our court has made it clear that the right to prior hearing is not limited to wages. (*Randone* v. *Appellate Department*, 5 Cal.3d 536, 547-548 [96 Cal.Rptr. 709, 488 P.2d 13].) In *Fuentes* v. *Shevin*, 407 U.S. 67, 88 [32 L.Ed.2d 556, 574-575, 92 S.Ct. 1983], the U.S. Supreme Court stated that the issue in *Sniadach* and *Goldberg* was not the deprivation of the necessities of life, but "establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect." Nevertheless, in *Mathews*—in which *Fuentes* was not cited—the court, in distinguishing between wages or welfare benefits and disability benefits, stated: "Eligibility for disability benefits, in contrast, is not based upon financial need. Indeed, it is wholly unrelated to the worker's income or support from many other sources, . . ." (424 U.S. 319, 340-341 [47 L.Ed.2d 18, 36, 37].) *Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d 194, 208-209, however, makes clear that our court does not intend to abandon *Randone* in the same fashion as the United States Supreme Court abandoned *Fuentes*.

The question would seem to be whether Cansdale was, because of the Board's unilateral action, deprived of continuing income, whether it be labeled disability benefits or salary. Both Cansdale and the CHP were notified about one month in advance of the cancellation of Cansdale's disability payments and that he was eligible to be reinstated as a state traffic officer. Under the statute he had a right to such reinstatement although he was not given an opportunity for a hearing before March 1. Nothing in the record suggests that he was prevented from notifying both the Board and the CHP that he would appear for work under protest on March 1, and would perform only such tasks that were consistent with his assessment of his condition. The CHP, of course, might at that point have attempted to fire him; but as *Skelly* v. *State Personnel Bd., supra,* makes clear, before he could be disciplined, suspended, or fired, he would have been entitled to notice and an opportunity for a hearing at which time he could have tested the validity of the Board's order in requiring him to return to work under penalty of being deprived of either his disability pension or salaried income.

This is not to say that such a procedure is the most efficient. Had Cansdale followed that procedure, it would doubtless have been inefficient and time-consuming in that it might very well have turned out that two hearings on the same issue were being held, one to challenge any discipline the CHP might have attempted to impose; a second to challenge the Board's determination that he was no longer disabled.

The issue, however, is not efficiency but whether the statutory system as further explained by *Skelly* deprives Cansdale of a significant property interest without prior notice and an opportunity for a hearing. It seems that the procedure does not, and we therefore reject Cansdale's request for disability benefits from March 1, 1972, to December 12, 1973.

3. ■ Cansdale's last argument is that the trial court erred in not granting him a new trial on the basis of newly discovered evidence.

The alleged new evidence was contained in a declaration of Angel B. Pena, M.D., which in pertinent part stated as follows: "On October 31, 1974, I saw Mr. Alanson P. Cansdale in my offices. Mr. Cansdale stated: While working, sitting in the shoe department stock room, I was going to

check with the security man who was at my right, as I turned back to look at him, I twisted my lower back. Previous back injury about 7 years ago. . . .

I diagnosed Mr. Cansdale's current injury as a 'moderate lumbosacral sprain with pain in right lumbar region. Flexion limited to 75 degrees. Hyperextension painful. Straight leg raising limited to 90 degrees, bilaterally. No inguinal or femoral herniae noted. Deep tendon relexes 4-plus on left and 1-plus on right.''

Cansdale alleges that this finding by Dr. Pena represented an independent "objective" finding of disability, of the type Dr. Heffler found missing. That, if this evidence had been presented to him (Dr. Heffler) and properly documented, he would have changed his evaluation of Cansdale's condition to accord with that of Drs. Loseff and Masserman.

First, we question if the evidence offered is "newly discovered" evidence. ■ Normally, to support a motion for a new trial on this ground, the court must determine if the evidence was in existence at the time of the trial and could not have been discovered with reasonable diligence. However, *Andersen* v. *Howland,* 3 Cal.App.3d 380 [83 Cal.Rptr. 308], another back injury case, applies the rule liberally, so we will treat the issue on its merits.

■ A motion for a new trial on the grounds of newly discovered evidence is a matter which is committed to the sound discretion of the trial court. All presumptions are in favor of the order made by the trial court, and a reviewing court will not interfere unless a clear abuse of discretion is shown. (*Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 358-359 [170 P.2d 465].) ■ Dr. Pena diagnosed Cansdale's current injury as a moderate lumbosacral sprain that apparently was caused when he twisted his back while working in the shoe department stock room. There is nothing in the record to connect the 1974 injury to the 1968 injury. It is speculative and arguably remote. ■ The newly discovered evidence must be material in the sense that it is likely to produce a different result. It must be specific, and if it is not, a new trial cannot be granted. (*Schultz* v. *Mathias,* 3 Cal.App.3d 904, 910 [83 Cal.Rptr. 888].) ■ Cansdale has not proved a clear abuse of discretion.

The judgment is affirmed; Cansdale's attempted appeal from the order denying his motion for a new trial is dismissed.

Kaus, P. J., and Ashby, J., concurred.