[Civ. No. 37110. First Dist., Div. One. Sept. 13, 1976.]

ROBERT S. HARMON, JR., Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF SAN MATEO COUNTY,
Defendant and Respondent.

690

■■■■■■■■■■■■■■■■■■

COUNSEL

Bennett, Hughes, Kane & Niven and Dick W. Bennett for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Gregory J. Antone, Deputy District Attorney, for Defendant and Respondent.

OPINION

**SIMS, J.**—Plaintiff, a deputy sheriff, has appealed from a judgment which denied his petition for writ of mandate, in which he sought review (Code Civ. Proc., § 1094.5) of a decision of the defendant board which adopted the proposed decision of a referee that the plaintiff was able to perform the duties of a deputy sheriff, despite his claim that he was permanently incapacitated physically for the performance of such duties as a result of injuries received in a service-connected accident on March 18, 1972. His sole contention on appeal is that there is no substantial evidence that he is not permanently incapacitated for the performance of his duties as an employee of the sheriff's office in San Mateo County as provided in section 31724 of the Government Code.[1] The burden of proof is on the claimant. (*Rau* v. *Sacramento County Ret. Bd.* (1966) 247 Cal.App.2d 234, 238 [55 Cal.Rptr. 296]; *Lindsay* v. *County of San Diego Ret. Bd.* (1964) 231 Cal.App.2d 156, 160 and 161-162 [41 Cal.Rptr. 737].) The question more appropriately may be phrased: Does the evidence require a finding as a matter of law that the deputy was so incapacitated?

The defendant board conceded that the court should, and the court's judgment recites that it did, exercise its independent judgment on the evidence taken by the referee and considered by the board. (See *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 45-46 [112 Cal.Rptr. 805, 520 P.2d 29]; and *Craver* v. *City of Los Angeles* (1974) 42 Cal.App.3d 76, 79 [117 Cal.Rptr. 534].) ■ Our review is therefore governed by principles set forth in *Le Strange* v. *City of Berkeley* (1962) 210 Cal.App.2d 313 [26 Cal.Rptr. 550], as follows: "When the superior court has rendered its judgment on mandamus and the judgment is appealed, the power of the appellate court is governed

---

[1]Section 31724 of the Government Code provides in pertinent part: "If the proof received, including any medical examination, shows to the satisfaction of the board that the member is permanently incapacitated physically or mentally for the performance of his duties in the service, it shall . . . retire him . . . ."

■■■■■■■■

by the substantial evidence rule, i.e., the determination of whether the evidence, viewed in the light most favorable to the respondent, sustains the findings of the trial court, resolving any reasonable doubts in favor of those findings. This rule obtains whether the appellate court is reviewing the findings of the trial court where the latter has exercised independent judgment or whether the findings involve the decision of a local administrative agency. In the former situation the appellate court is confined to the evidence received by the trial court; in the latter case it is limited to the evidence in the agency record. [Citations.]" (210 Cal.App.2d at p. 321. See also *Rau* v. *Sacramento County Ret. Bd.* (1966) 247 Cal.App.2d 234, 236-237 [55 Cal.Rptr. 296].) On a review of the evidence we cannot say that the trial court erroneously exercised its independent judgment. The judgment must be affirmed.

The deputy was born on April 23, 1947. He began his employment as a deputy sheriff in 1968. He was assigned to auto patrol for one year and the jail division for two and one-half years. He then returned to patrol duty, and on March 18, 1972, his patrol car rolled over. He was sent to the hospital for two hours and sent home. He went back to patrol work on March 29, 1972, but after missing a few days work due to back pain and headaches, he took an extended disability leave commencing April 12, 1972. He returned to work again on July 31, 1972, as a bailiff in the superior court. He continued in that post with but little time off, until August 20, 1973, when he quit permanently because of back problems. His back "flared up" after he grabbed someone in the courtroom in the course of his duties. He testified that his doctor, Dr. Pitlyk, told him to stop work. Three months before the hearing appellant took a promotional examination for sheriff's sergeant, but was disqualified for his physical incapacity.

Medical reports, but no physician's testimony, were introduced. Dr. Borders, assigned to examine claimant on the board's behalf, diagnosed "mild degenerative change of lower lumbar spine, L-5 level, secondary to trauma." He commented that "if he [appellant] was expected to continue his activities as a patrolman, I can see where he might be a danger to his partner because of his inability to always be able to carry out activities very quickly. He would be able to carry out duties of a more clerical nature, duties not requiring significant risk of violence." This report was dated December 20, 1973.

Two reports from Dr. Pitlyk, dated May 25, 1973, and September 5, 1973, were submitted. The former concluded that appellant would be

unable to continue the activities of a patrolman at that time, and that he should be continued in a category precluding heavy lifting. The second report concluded that appellant's condition appeared permanent. "The patient has no objective deficit but is subjectively disabled to some extent. The subjective factors include intermittent low back pain which appears to be brought regularly with increased heavy back activities such as is involved in police work (when dealing with belligerent individuals). The limitations recommended for this individual include repetitive back bending or lifting of objects in excess of 25 pounds on a regular basis. Additional limitations include even infrequent violent, physical effort which would necessarily be involved in continued police work. Specifically, the patient's limitations include the avoidance of heavy lifting, repeated bending and stooping, and all forms of heavy work."

A report written by Dr. Weitz, dated April 13, 1973, stated that he doubted whether appellant would be able to resume the activities of a patrolman unless his symptoms are markedly reduced over what they were at that time. He recommended a disability category of disability precluding heavy lifting. "It is my opinion that his subjective complaints are considered slight becoming intermittent moderate with strenuous activity."

The Workmen's Compensation Appeals Board awarded 33 percent permanent disability compensation to the deputy on December 7, 1973, in the sum of $6,900, pursuant to stipulation of the employee and the employer.

The San Mateo County Civil Service Commission's class specifications for deputy sheriff defined the office as follows: "Under supervision, investigates crimes, patrols assigned areas, books and supervises prisoners, acts as bailiff or civil deputy; performs all related duties in law enforcement and crime prevention as may be assigned." After a long paragraph detailing typical tasks, many of which require no particular physical prowess, the classification includes among minimum qualifications: "*Physical Requirements*: Must be free of all physical limitations and defects in order to perform · strenuous physical activities as required."

Appellant testified that both bailiffs and patrolmen were required to use physical force sometimes. In his opinion, there was no assignment in the sheriff's office that does not involve physical violence or force, and he knew of no light-duty jobs. He also said that he would resign rather than

accept a light-duty assignment. On cross-examination, he said that both riding in a patrol car and sitting for long periods as a bailiff bothered his back. He said that he suffered constant pain or stiffness. He did not play golf any more, nor drive long distances. He admitted he was not required to put forth the kind of physical exertion that caused him to quit as bailiff more than three or four times in one year.

Assistant Sheriff Craik testified that there are jobs in the department of lighter duty than patrol duty, within the job category of deputy sheriff, for example, bailiff, process serving, desk officer or jail front office duty. In these jobs, opportunity for physical contact is minimal, and the assumption is that the man would return to full duty within a reasonable time. Since July 1, 1973, the sheriff wanted men to be 100 percent fit before being allowed to return to any duty. Therefore, these jobs would no longer be available for a man to occupy for a long period of time as a transition to full duty. On cross-examination, he testified that he knew of no position in the department presently that would not involve significant risk of violence, although a man could be exempted from going on assignments such as riot-control.

The board introduced a film taken by an investigator showing the deputy playing golf, walking and driving on April 4 and 5, 1974. Most of the footage was taken at Emerald Hill Golf Course in Redwood City. In the film, he walked, pulled a golf cart uphill, stooped and bent many times, practiced various shots, looked for lost balls, and swung forcefully. The investigator also testified that he saw the deputy weeding his yard, crawling, bending and carrying debris, before going to play golf.

On redirect examination the deputy explained that during the time he played golf, he sat down several times. The doctor had told him to start playing again. He said that Emerald Hill was a short course, and that he used lighter clubs. He played once more after the film was made. He said that playing golf allowed him to regulate his activity, whereas patrol did not. The investigator said that he did not see the deputy sit except while waiting to begin his round.

Before examining the foregoing evidence it is necessary to determine what is meant by the requirement that the employee be "permanently incapacitated physically or mentally for the performance of his duties in the service." (Gov. Code, § 31724, fn. 1 above.) In *Mansperger* v. *Public Employees' Retirement System* (1970) 6 Cal.App.3d 873 [86 Cal.Rptr.

450], the court was concerned with the phrase "incapacitated for the performance of duty" as used in section 21022 of the Government Code covering the retirement of highway patrol or local safety members of the state public employees' retirement system. There the employee, a fish and game warden, was not disabled, except for activities requiring heavy lifting and carrying. The court decided, "We hold that to be 'incapacitated for the performance of duty' within section 21022 means the *substantial* inability of the applicant to perform his usual duties." (6 Cal.App.3d at p. 876. See also *Cansdale* v. *Board of Administration* (1976) 59 Cal.App.3d 656, 664 [130 Cal.Rptr. 880].) In *Barber* v. *Retirement Board* (1971) 18 Cal.App.3d 273 [95 Cal.Rptr. 657], the shoe was on the other foot. A fireman was fighting compulsory retirement. In reviewing the matter the court rejected the fire chief's contention that "incapacitated for the performance of his duty" as found in the provisions for compulsory retirement in a city charter meant *"any and all duties that are performed by firemen."* (18 Cal.App.3d at p. 278, italics the court's.) It concluded, "We think that in view of the well recognized public policy favoring the employment and utilization of physically handicapped persons (Welf. & Inst. Code, § 10650), the Chief's interpretation here was too broad. Under the circumstances, where there were permanent light duty assignments, a narrower construction declaring 'his duty' in section 171.1.3 to refer to duties required *to be performed in a given permanent assignment within the department* would be more reasonable." (*Id.* See also *Craver* v. *City of Los Angeles, supra,* 42 Cal.App.3d 76, 79-80.)

In *Mansperger* v. *Public Employees' Retirement System,* the court upheld the findings of the governing board of the retirement system and the trial court that the employee was not entitled to a retirement pension. It stated, "While it is clear that petitioner's disability incapacitated him from lifting or carrying heavy objects, evidence shows that the petitioner could substantially carry out the normal duties of a fish and game warden. The necessity that a fish and game warden carry off a heavy object alone is a remote occurrence. Also, although the need for physical arrests do occur in petitioner's job, they are not a common occurrence for a fish and game warden." (6 Cal.App.3d at pp. 876-877.)[2] ▇ Here

[2]In *Barber* the court found that although the fireman was physically fit to be a lieutenant in the fire department on temporary light duty, there were no such assignments available. It upheld the forced retirement (18 Cal.App.3d at pp. 279-280). In *Craver* the case was remanded for application of the independent judgment test by the superior court with the following admonition, "We agree with the court in *Barber* v. *Retirement Board, supra,* 18 Cal.App.3d at page 278, that where there are permanent light duty assignments and a person who becomes 'incapacitated for the performance of his duty . . . shall be retired,' that person should not be retired if he can perform duties in

even accepting in full the facts and opinions in the doctor's reports, and disregarding the testimony of the investigator and the supporting motion pictures, the record supports the implied finding that the deputy was not incapacitated for the performance of the duties of bailiff or other duties set forth in the civil service classification which did not involve heavy lifting or frequent necessity, as on patrol, for the use of considerable physical effort to subdue arrestees or prisoners.

The deputy seeks to avoid the foregoing conclusion by reference to testimony of the assistant sheriff that since July 1, 1973, it was the policy of the sheriff's office not to restore officers to duty unless they were 100 percent fit for any duty to which they might be assigned, and that at the time of the hearing before the referee in April 1974, some eight months after the deputy, not the sheriff, had terminated the employment relationship, there was no position available in the sheriff's office which would not involve a significant risk of violence. He relies upon *Barber* v. *Retirement Board, supra,* where the board, the trial court, and the Court of Appeal upheld the compulsory retirement of the fire lieutenant sought by the fire chief because there was no light duty available for one of the lieutenant's rank with his disability. (18 Cal.App.3d at pp. 279-280. See also *Dobbins* v. *City of Los Angeles* (1970) 11 Cal.App.3d 302, 305-306 [89 Cal.Rptr. 758]; and *O'Neal* v. *City of San Francisco* (1969) 272 Cal.App.2d 869, 874-875 [77 Cal.Rptr. 855].) In this case the sheriff is not a party seeking to force the deputy to retire. Under the provisions of the County Employees Retirement Law of 1937, the employer is entitled to secure judicial review of a decision denying an employee retirement because the retirement board, as here, is not satisfied from the medical examination and other evidence that the member is incapacitated for the performance of his duties. If no such action is taken by the employer and the denial becomes final the employer must reinstate the employee.[3] (See

a given permanent assignment within the department. He need not be able to perform any and all duties performed by firemen or, in the instant case, policemen. Public policy supports employment and utilization of the handicapped. (*Barber* v. *Retirement Board, supra.*) If a person can be employed in such an assignment, he should not be retired with payment of a disability retirement pension." (42 Cal.App.3d at pp. 79-80.)

[3]Government Code section 31725 provides: "Permanent incapacity for the performance of duty shall in all cases be determined by the board. [¶] If the medical examination and other available information do not show to the satisfaction of the board that the member is incapacitated physically or mentally for the performance of his duties in the service and the member's application is denied on this ground the board shall give notice of such denial to the employer. The employer may obtain judicial review of such action of the board by filing a petition for a writ of mandate in accordance with the Code of Civil Procedure or by joining or intervening in such action filed by the member within 30 days of the mailing of such notice. If such petition is not filed or the court enters

*McGriff* v. *County of Los Angeles* (1973) 33 Cal.App.3d 394, 398-400 [109 Cal.Rptr. 186].) Moreover, the assistant sheriff's testimony when taken as a whole does not foreclose the possibility that there were positions in the sheriff's office which could be performed by one subject to the disabilities which the doctors reported that the deputy suffered.

In the second place neither the referee, the board, nor the trial court were required to disregard the evidence concerning the deputy's actual physical activities. Motion picture evidence is recognized as competent evidence in determining the extent of disability. (See *Redner* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 83, 94 [95 Cal.Rptr. 447, 485 P.2d 799]; and *Cansdale* v. *Board of Administration, supra,* 59 Cal.App.3d 656, 665.) A review of the physician's reports reflects that aside from a demonstrable mild degenerative change of the lower lumbar spine at the L-5 level, the diagnosis and prognosis for the appellant's condition are dependent on his subjective symptoms. His credibility was impeached by the contradictions in his testimony concerning his ability to play, and his actually engaging in playing, golf. On such a record the fact finders were entitled to consider what was observed by the witness, and what they, and we, could observe on the motion pictures. We cannot say as a matter of law that the finding of the trial court that the deputy is not permanently incapacitated for the performance of duty is erroneous as a matter of law.

The fact that the county through its compensation carrier stipulated to a 33 percent disability rating before the Workmen's Compensation Appeals Board does not bind the retirement board in these proceedings with respect to the issue of the deputy's capacity to perform his duties. (See *Grant* v. *Board of Retirement* (1967) 253 Cal.App.2d 1020, 1021 [61 Cal.Rptr. 791]; and *Flaherty* v. *Board of Retirement* (1961) 198 Cal.App.2d 397, 402-406 [18 Cal.Rptr. 256].)

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

---

judgment denying the writ, whether on the petition of the employer or the member, and the employer has dismissed the member for disability the employer shall reinstate the member to his employment effective as of the day following the effective date of the dismissal."