[No. B176720. Second Dist., Div. Five. Dec. 9, 2005.]

MARIETTA JONES, Plaintiff and Appellant, v.
LOS ANGELES COUNTY OFFICE OF EDUCATION, Defendant and
Respondent.

COUNSEL

Faunce, Singer & Oatman, Edward L. Faunce and Larry J. Roberts for Plaintiff and Appellant.

Law Offices of Dennis J. Walsh, Dennis J. Walsh and Douglas Lyon for Defendant and Respondent.

OPINION

**TURNER, P. J.—**

## I.   INTRODUCTION

Plaintiff, Marietta Jones, appeals from the denial of her mandate petition seeking reinstatement and backpay. Plaintiff was injured while employed as a paraeducator by defendant, the Los Angeles County Office of Education. We agree with defendant that plaintiff is only entitled to placement on a 39-month reemployment list pursuant to Education Code section 45192. Hence, we affirm the denial of her mandate petition.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Premandate Petition Events

The following factual and procedural matters are taken from the evidence before the trial court at the time of the hearing on the mandate petition including plaintiff's deposition testimony. Plaintiff was hired by defendant as a paraeducator in January 1983. Plaintiff completed probation and became a permanent employee in May 1983. Incident to her employment, she became a member of the Public Employees' Retirement System. A paraeducator works under the supervision of a classroom teacher and is described in defendant's written job description as a paraprofessional. Among the duties of a paraeducator are assisting a teacher in: teaching; implementing a child's individualized education program "through instruction in a wide variety of activities, such as nature study, playing games, singing, dancing, and sports"; maintaining a safe teaching environment; "lifting . . . pupils in and out of wheelchairs, braces, and other orthopedic equipment"; "positioning pupils and rendering various forms of personal care such as toileting and diapering"; "dressing, undressing, bathing, and grooming as needed"; and moving pupils to and from school buses to and from school and on field trips.

Plaintiff was first injured at work in 1992 when she had to duck because a ball was thrown at her. Plaintiff was treated by a doctor as a result of the 1992 injury. Plaintiff was again injured at work on May 28, 1998. Plaintiff helped a teacher separate two students who were fighting. At her deposition, plaintiff described how she was injured: "I took the one that was struggling the most to calm him down. But . . . when I was holding he kicked off the table. . . . [H]e raised up, kicked off the table and my back slammed right dead into the metal cabinet." Although injured, plaintiff underwent treatment and continued to work throughout the summer. Plaintiff was reinjured on September 11, 1998, a Friday, when she was lifting a television set. She was unable to return to work because of her injuries on the following Monday, September 14, 1998. Plaintiff never returned to work. At her deposition, plaintiff testified she stopped working because of her back injuries.

On December 22, 1999, defendant notified plaintiff in writing that her sick leave benefits would be exhausted on February 1, 2000. On January 11, 2000, she requested medical leave on the ground she suffered from a serious health condition that prevented her from performing the essential functions of her job. Plaintiff's medical leave request stated she suffered from discogenic degenerative disease. Her medical leave time expired on May 4, 2000. On April 24, 2000, plaintiff's physician, Dr. Morris Halfon, wrote defendant: "The patient is able to return to work with light duties only, and the following restrictions apply: [¶] No repetitive bending, climbing, stooping, awkward

movement, sitting or standing for prolonged periods of time[,] no heavy lifting, or carrying over 10 lbs. No long distance walking. [¶] [Plaintiff] is to continue therapy as needed to relieve residual pain. She has been released to return to work on April 26, 2000." On June 26, 2000, plaintiff was notified that she was "separated from employment" effective on May 4, 2000. Further, on June 26, 2000, plaintiff was notified she would be placed on the Education Code section 45192 reemployment list. The June 26, 2000 letter stated: "Your name will be placed on a 39-month re-employment list by the Personnel Commission office. At any time within this 39-month period, when you are able to provide the office with a release from your doctor, and state in writing to the Personnel Commission that you wish to return to work, you will be offered employment opportunities as they become available. This opportunity will be offered to you over all other applicants except for those laid off for lack of funds or work." Attached to the June 26, 2000 letter was a copy of Education Code section 45192.

On June 26, 2000, Roberta Laos, a coordinator employed by defendant assigned to "Human Resource Services," filed a disability retirement request on plaintiff's behalf with the Benefit Application Services Division of the Public Employees' Retirement System. Ms. Laos's letter stated in part: "I am requesting disability retirement for the employee named below per Government Code section 2115[3] which states: 'Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any member believed to be disabled, unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Section 20731.' " On July 10, 2000, plaintiff was notified by the Benefit Application Services Division of the Public Employees' Retirement System that her disability retirement application had been received and would be processed. On August 2, 2001, plaintiff's disability retirement application was denied. The August 2, 2001 letter, prepared by Chris Nishioka, the Public Employees' Retirement System benefits division chief, stated in part: "All medical evidence submitted was reviewed before a final decision was rendered. Our review included the report prepared by Joseph P. Klein, M.D., that included the miscellaneous reports you provided to him at the exam. Based on the evidence in those reports it is our determination that your orthopedic (discogenic disease, upper and lower back and neck) condition(s) is not disabling. As a result, we have concluded that you are not substantially incapacitated for the performance of duties as a Paraeducator with the Los Angeles County Office of Education. Therefore, the application for disability retirement is denied." The August 2, 2001 letter explained plaintiff might wish to consider several alternatives: resume working as a paraeducator; transfer to a different job with the same agency or another employer which is part of the

Public Employees' Retirement System; discontinue employment with Public Employees' Retirement System agencies and leave accumulated retirement contributions in the retirement fund or request a service retirement; or terminate employment with Public Employees' Retirement System agencies and secure a refund of her accumulated retirement contributions albeit with the forfeiture of all rights to service retirement benefits. Finally, plaintiff was notified of her right to appeal the denial of her disability pension request pursuant to California Code of Regulations, title 2, sections 555 through 555.4. A copy of the relevant regulations providing for an appeal from the denial of her disability retirement request was attached to the August 2, 2001 letter. On September 4, 2001, plaintiff appealed the denial of her disability retirement application by the Public Employees' Retirement System.

On November 19, 2001, plaintiff settled her workers' compensation claim against defendant. As part of the workers' compensation litigation, plaintiff was offered vocational rehabilitation. Plaintiff needed vocational rehabilitation because she could not return to her position as a paraeducator. Plaintiff's physicians imposed restrictions in her ability to return to work. At her deposition, plaintiff testified the restrictions included, "No bending, no stooping, no heavy lifting, no awkward movement, no long distance walking, no sitting or standing for long periods of time." Plaintiff's doctors explained to her that these restrictions were permanent. As a paraeducator, plaintiff was required to bend "a lot" because she was working with special education students. Plaintiff also testified she was required to "stoop" almost every day when working as a paraeducator. Further, plaintiff was restricted from lifting more than five pounds. Plaintiff explained at one point that she was required to regularly lift more than five pounds. Plaintiff's lifting duties included moving books, a television, and supplies. Plaintiff occasionally would lift more than five pounds while in the workplace. Further, plaintiff would make awkward movements on a daily basis while working as a paraeducator. Plaintiff testified most of her job required "repetitive bending." Plaintiff indicated that her job as a paraeducator "frequently" required she engage in "repetitive stooping." In terms of the standing for long periods of time restriction, plaintiff testified she was frequently required to do so as a paraeducator. At her deposition, plaintiff was asked about the work restrictions imposed in Dr. Halfon's April 24, 2000 letter. The following transpired at plaintiff's deposition: "Q. So it was your understanding that in order for you to come back to work, you could come back but you couldn't do any job duties as a paraeducator that required you to bend, climb, stoop, do awkward movement, sit or stand for long periods of time, or lift over ten pounds; correct? [¶] A. Correct."

Because she could no longer perform the physical tasks of a paraeducator, plaintiff underwent and completed retraining as a medical transcriber. Plaintiff discovered after working for one week that she could not perform the tasks of a medical transcriber but for financial reasons she did not seek any other vocational retraining. She had been seeking other employment after her unsuccessful effort to work as a medical transcriber.

On November 13, 2001, plaintiff received a notice of hearing of her appeal from the August 2, 2001 denial of her disability retirement application. The hearing was scheduled for January 18, 2002. On January 14, 2002, plaintiff withdrew her appeal from the denial by the Public Employees' Retirement System of her disability retirement application.

On July 15, 2002, plaintiff, through her attorney, Mr. Faunce, requested she be reinstated to her position as a paraeducator. On July 22, 2002, Ms. Laos responded to plaintiff's July 15, 2002 reinstatement request. In part, Ms. Laos referred to her previous June 26, 2000 letter. As noted, the June 26, 2000 letter stated: plaintiff was on the 39-month reemployment list; in order to be rehired, plaintiff must supply a release from her physician to return to work; and plaintiff must state in writing she wished to return to work. The parties then exchanged various letters setting forth their positions.

On January 16, 2003, plaintiff filed a Government Code section 910 claim with defendant seeking backpay and restoration to the payroll. Plaintiff calculated the amount of accumulated backpay at $71,300 plus fringe benefits. On February 19, 2003, plaintiff was notified in writing that her Government Code section 910 claim was rejected.

### B.   The Mandate Proceedings

On August 13, 2003, plaintiff filed her mandate petition. Plaintiff alleged she was entitled to reinstatement and backpay from June 26, 2000, and that defendant erroneously placed her on the 39-month Education Code section 45192 reemployment list. On December 12, 2003, defendant answered and took the position, among other things, that plaintiff was only entitled to be placed on the 39-month reemployment list. On March 22, 2004, the mandate petition was denied. The trial court concluded that plaintiff was subject to the

Public Employees' Retirement System and she could properly be placed on the 39-month reemployment list as permitted by Education Code section 45192. Plaintiff timely appealed from the April 28, 2004 judgment.

## III.  DISCUSSION

### A.  Matters Not at Issue

Before analyzing the merits of this case, it is important to clarify what is not at issue. First, there is no issue before us as to the Americans with Disabilities Act of 1990 or the California Fair Employment and Housing Act. (42 U.S.C. § 12101 et seq.; Gov. Code, § 12900 et seq.) The mandate petition raises no issue as to the Americans with Disabilities or the Fair Employment and Housing Acts. Further, plaintiff's Government Code section 910 claim makes no reference to disability discrimination issues covered by either of these antidiscrimination statutory schemes.

Second, plaintiff makes extensive reference to reemployment rights available under the County Employees Retirement Law of 1937. (Gov. Code, § 31450 et seq.) The County Employees Retirement Law of 1937 is irrelevant to the outcome of this case. Plaintiff is subject to the Public Employees' Retirement Law which is found in Government Code section 20000 et seq. (See *Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350]; *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 496 [9 Cal.Rptr.3d 857, 84 P.3d 966].) Government Code section 20370, subdivisions (a) and (c)(1) define membership in the Public Employees' Retirement Law thusly: "(a) 'Member' means an employee who has qualified for membership in this system and on whose behalf an employer has become obligated to pay contributions. [¶] . . . [¶] (c) 'Local member' includes: [¶] (1) Local miscellaneous members." Government Code section 20383 states in part, " 'Local miscellaneous member' includes all employees of a county office of education . . . ." Plaintiff is an employee of a county education office. Hence, plaintiff is subject to the Public Employees' Retirement Law. The provisions of the County Employees Retirement Law of 1937 relied upon by plaintiff are not controlling.

### B.  Standard of Review

The present case involves plaintiff's discharge and defendant's refusal to reemploy her. Hence, the trial court was required to conduct independent review of defendant's decision to discharge and not reemploy plaintiff. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 823–824 [85 Cal.Rptr.2d

696, 977 P.2d 693]; *Strumsky v. San Diego County Employees Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29].) We examine the trial court's factual findings for substantial evidence. (*Fukuda v. City of Angels, supra,* 20 Cal.4th at p. 824; *Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 72–75 [64 Cal.Rptr. 785, 435 P.2d 553].)

### C. The Public Employees' Retirement Law Disability Retirement Provisions and Defendant's Placement on the 39-month Reemployment List

The right to receive a disability retirement for employees subject to the Public Employees' Retirement Law is governed by Government Code section 21150 et seq. Government Code section 21150 states in part, "Any member incapacitated for the performance of duty shall be retired for disability pursuant to this chapter . . . ." Under the Public Employees' Retirement Law, an employer may not terminate an employee believed to be disabled. Rather, the employer must first file a disability retirement application on behalf of the employee believed to be disabled. Government Code section 21153 states, "Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any member believed to be disabled, unless the member waives the right to retire for disability and elects to withdraw contributions or to permit contributions to remain in the fund with rights to service retirement as provided in Section 20731."

The test for determining whether an employee subject to the Public Employees' Retirement Law is disabled is set forth in Government Code section 21156, which states in relevant part, "If the medical examination and other available information show to the satisfaction of the board . . . that the member is incapacitated physically or mentally for the performance of his or her duties in the state service and is eligible to retire for disability, the board shall immediately retire him or her for disability . . . ." The level of disability for Public Employees' Retirement Law employees has been described by our colleagues in the First Appellate District: " ' "[Incapacitated] for the performance of duty" within the meaning of Government Code section 21022 means the *substantial* inability of the applicant to perform his usual duties. [Citation.]' (*Cansdale v. Board of Administration* [(1976)] 59 Cal.App.3d [656,] 664–665 [130 Cal.Rptr. 880].)" (*Petrillo v. Bay Area Rapid Transit Dist.* (1988) 197 Cal.App.3d 798, 811 [243 Cal.Rptr. 74].) As noted, plaintiff's disability retirement application was denied. This was the equivalent of a finding plaintiff was not substantially unable to perform her duties as a paraeducator. (*Petrillo v. Bay Area Rapid Transit Dist., supra,* 197

Cal.App.3d at p. 811; *Cansdale v. Board of Administration, supra*, 59 Cal.App.3d at pp. 664–665.) Plaintiff dismissed her appeal from the finding she was not disabled.

█ By June 26, 2000, all of plaintiff's leave time had expired. The controlling provision of law is Education Code section 45192. Education Code section 45192 describes what is to happen when all leave time has expired in the case of classified employees such as plaintiff. In relevant part, Education Code section 45192 states: "When all available leaves of absence, paid or unpaid, have been exhausted and if the employee is not medically able to assume the duties of the person's position, the person shall, if not placed in another position, be placed on a reemployment list for a period of 39 months. When available, during the 39-month period, the person shall be employed in a vacant position in the class of the person's previous assignment over all other available candidates except for a reemployment list established because of lack of work or lack of funds, in which case the person shall be listed in accordance with appropriate seniority regulations." Education Code section 45192 requires placement of an employee who is medically unable to perform his or her duties on the 39-month reemployment list once all leave time has expired.

Defendant could lawfully place plaintiff on its 39-month reemployment list. Defendant was confronted with evidence that plaintiff was "not medically able to assume [her] duties" within the meaning of Education Code section 45192. Plaintiff testified at her deposition she could no longer perform the physical tasks of a paraeducator. Plaintiff's physician, Dr. Halfon, stated in his April 24, 2000 letter that she could not perform the physical tasks of a paraeducator. The worker's compensation settlement ensured plaintiff would receive job retraining because she could no longer be a paraeducator. Defendant could reasonably decide that plaintiff was medically unable to be a paraeducator and all of her leave time had expired. Confronted with this state of affairs, defendant could place plaintiff on the 39-month reemployment list. One thing is clear though—there was no statutory duty to pay plaintiff a full salary for a job she would not perform.

█ The difficult issue is what is the legal effect of the denial of plaintiff's disability retirement application by the Public Employees' Retirement System. As previously noted, the August 2, 2001 letter, prepared by the chief of the Public Employees' Retirement System benefits division, states that plaintiff was "not substantially incapacitated." If plaintiff was not "incapacitated physically or mentally" from performing her duties within the meaning of Government Code section 21156, it can be argued she could not be placed on the 39-month reemployment list. After all, Education Code section 45192, the provision requiring placement on the 39-month reemployment list, has as

one of its elements a requirement that the classified employee be medically unable to perform her or his duties. There was conflicting evidence as to plaintiff's physical condition—that of her physicians and the conclusion of the Public Employees' Retirement System benefits division. Defendant had the managerial discretion to weigh the conflicting evidence and then act within the law. (See *Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93, 100 [69 Cal.Rptr.2d 900, 948 P.2d 412]; *Sheppard v. Freeman* (1998) 67 Cal.App.4th 339, 356 [79 Cal.Rptr.2d 13].) The conflicting evidence and inferences were such that defendant could act as it did. Both parties argue, based on properly qualified medical evidence, that plaintiff is physically unable to work as a paraeducator. Finally, as noted, we examine the trial court's decision for substantial evidence. (*Fukuda v. City of Angels, supra,* 20 Cal.4th at p. 824; *Yakov v. Board of Medical Examiners, supra,* 68 Cal.2d at pp. 72–75.) The properly qualified medical evidence and plaintiff's own testimony constitute substantial evidence that she was, as described in Education Code section 45192, not "medically able to assume [her] duties" as a paraeducator thus permitting her placement on the 39-month reemployment district.

## IV.  DISPOSITION

The judgment is affirmed. Defendant, the Los Angeles County Office of Education, is to recover its costs incurred on appeal from plaintiff, Marietta Jones.

Kriegler, J., concurred.

**ARMSTRONG, J.,** Dissenting.—I respectfully dissent.

The majority writes that "[o]ne thing is clear . . . there is no statutory duty to pay plaintiff a full salary for a job she would not perform." I think there is: Government Code section 21153, which provides that "Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any member believed to be disabled . . . ."

The majority is able to avoid Government Code section 21153 (section 21153) and focus on Education Code section 45192 by finding a distinction between "disability" under the Government Code and being "medically able to assume the duties of the . . . position," under the Education Code, thus creating a hierarchy of medical problems, so that Jones was not disabled under the Government Code, but was merely "medically unable" under the Education Code.

I do not see that the law makes that distinction. When Los Angeles County Office of Education applied for disability retirement for Jones, and when it separated her from employment and placed her on the 39-month reemployment list, it did so because it believed that her health was such that she could not do the job. Under those circumstances, Government Code section 21153 provides that the employee cannot be fired "[*n*]*otwithstanding any other provision of law*." (Italics added.) Any other provision of course includes Education Code section 45192.

Section 21153 provides that an employer may not separate an employee for a disability, but must apply for disability retirement for that employee. It does not specifically address the issue before us here: suppose the Public Employees Retirement System (PERS) says no? Given that problem with interpreting the statute, and bearing in mind that "Disability pension laws are intended to alleviate the harshness that would accompany the termination of an employee who has become medically unable to perform his duties" (*Haywood v. American River Fire Protection Dist.* (1998) 67 Cal.App.4th 1292, 1304 [79 Cal.Rptr.2d 749]), we look to the legislative history (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]) and find an answer: that section 21153 was enacted precisely to protect employees in Jones's situation.

The statute was added to the Government Code in 1970, as section 21023.5, through Assembly Bill No. 1153 of the 1969–1970 legislative session. (The statute was renumbered in 1995 as part of a general reorganization of portions of the Government Code.) According to its author, Wadie Deddeh, the bill was the "direct outgrowth" of a study by the Assembly Committee on Public Employment and Retirement. That committee's January 1970, report to the Assembly recommends that "[i]f the Public Employee's Retirement System denies an application for disability retirement by an employee who has been terminated by his agency for that reason, the agency shall forthwith reemploy the individual in his prior capacity."

In his letter to the Governor presenting the bill for signature, Assemblyman Deddeh cited the Assembly Committee study and wrote that "Under present procedures, it is possible—though infrequent—for a state or local employee to be discharged by the employer for reasons of disability, but for the P.E.R.S. retirement board to refuse his application for disability retirement on opposing medical grounds. In a few cases, this has resulted in an individual being left without any income—neither salary nor retirement income. [¶] . . . [¶]

*The bill requires that if the P.E.R.S. retirement board denies an application for disability retirement, that the employee shall be retained in employment.*"[1] (Italics added.)

The State Personnel Board's analysis of the bill and two enrolled bill reports recommending that the Governor sign the bill are in accord. The State Personnel Board wrote " '[w]hen an application for disability retirement is denied by PERS the employee is then considered capable of performing the full duties of the job and is returned to work.' " (57 Ops.Cal.Atty.Gen. 86, 88, fn. 2 (1974).) The report from the Department of Finance states that the law would provide that "individuals denied a timely request for disability be restored to positions of their former class," and the report by the Agricultural and Services Agency states that "Under AB 1153, when an application for disability retirement is denied by PERS, the employee will then be considered capable of performing the full duties of his job and be returned to work."

In 1974, the Attorney General opined that under section 21153, "upon a determination by the Public Employees' Retirement System that a member *can* perform the duties of his position, an employer of said member cannot thereafter terminate said employee on the grounds that he *cannot* perform such duties." (57 Ops.Cal.Atty.Gen., *supra*, at p. 86.)

The Attorney General was asked whether Government Code section 19253.5, subdivision (d)[2] allowed an employee to be dismissed for medical reasons, after PERS denied disability retirement. The Attorney General answered in the negative, pointing out that section 19253.5, subdivision (d) applies only when the employee is not eligible for disability retirement due to number of years of employment, and that in that case, there could be no PERS decision. If the employee is eligible to apply for disability retirement, section 21153 applies.

The Attorney General then wrote that under section 21153, "The decision of [PERS] is determinative in the employer's subsequent efforts to terminate

---

[1] While we do not normally glean legislative intent from the motives or understandings of individual legislators, even the bill's author, we do consider the statements of a bill's author, where, as here, it is evidence of more than the author's personal understanding. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590–591 [128 Cal.Rptr. 427, 546 P.2d 1371].)

[2] Government Code section 19253.5, subdivision (d) reads "When the appointing power after considering the conclusions of the medical examination provided for by this section or medical reports from the employee's physician, and other pertinent information, concludes that the employee is unable to perform the work of his or her present position, or any other position in the agency, and the employee is not eligible or waives the right to retire for disability and elects to withdraw his or her retirement contributions or to permit his or her contributions to remain in the retirement fund with rights to service retirement, the appointing power may terminate the appointment of the employee."

the employee for medical reasons. A contrary decision would create a severe financial consequence to an employee resulting from inconsistent decisions between an employer and [PERS] . . . . [¶] . . . The employer is thus bound by the PERS decision. To conclude otherwise would render the procedures outlined by Government Code section [21153] meaningless. It is not reasonable for the employee to go through the PERS hearing if the employer is not bound by said decision." (57 Ops.Cal.Atty.Gen., *supra*, at pp. 86, 87.)

Jones also cites administrative decisions from the State Personnel Board construing section 21153 in the same way. (*In re Dana Jackson* (1993) State Personnel Bd. Precedential Dec. No. 93-01, p. 10; *In re Ruth Keck* (2000) State Personnel Bd. Precedential Dec. No. 00-05.) These opinions are entitled to respect, if not deference (*California Dept. of Corrections v. State Personnel Bd.* (2004) 121 Cal.App.4th 1601, 1611 [18 Cal.Rptr.3d 390]) and for this reason, too, I believe that section 21153 prohibits an employer from terminating an employee, after PERS has denied a request for disability retirement.

Finally, "[i]f provisions of the Public Employees' Retirement Law are ambiguous or uncertain, they are to be liberally construed in favor of the pensioner." (*City of Fremont v. Board of Administration* (1989) 214 Cal.App.3d 1026, 1033 [263 Cal.Rptr. 164].)

I recognize the dilemma the law poses, that Jones must be reinstated to a job she says she cannot do. However, the dilemma is not unique to Jones, or to her employer. The dilemma exists elsewhere.

Under Government Code section 31725, which applies to members of the County Employees Retirement Act, if the relevant board rejects an application for disability retirement, and the employer fails to petition for judicial review of that decision, or the petition is denied, the "employer shall reinstate the member to his employment effective as of the day following the effective date of the dismissal." Notably, the relevant portions of section 31725 were enacted as a result of the same Assembly Committee on Public Employment and Retirement hearings which led to Government Code section 21153. (*McGriff v. County of Los Angeles* (1973) 33 Cal.App.3d 394, 398–399 [109 Cal.Rptr. 186].) Further, where Government Code section 19253.5 applies, if the employer's disability application "is denied, the appointing power shall reinstate the employee to his or her position with back salary and benefits." (Gov. Code, § 19253.5, subd. (i)(3).)

I echo judicial discussions of Government Code section 31725: "[t]he Legislature's intent is plain. [The employee] cannot be denied both work and disability retirement. If there is a hole in the statutory scheme, the county has to go to the Legislature for a patch." (*Raygoza v. County of Los Angeles* (1993) 17 Cal.App.4th 1240, 1247 [21 Cal.Rptr.2d 896].)

For these reasons, I would reverse the judgment.

Appellant's petition for review by the Supreme Court was denied March 1, 2006, S140538.